| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Address: 1437 Bannock Street<br>        Denver, CO 80202<br>Phone:    (720) 865-8301 | DATE FILED: May 28, 2021 10:53 AM<br>FILING ID: 606CD40E3497C<br>CASE NUMBER: 2021CV31704 |
| **Plaintiff:** GEORGINA PEREZ<br>**v.**<br><br>**Defendant:** SUNBEAM PRODUCTS, INC. d/b/a Jarden<br>Consumer Solutions, NEWELL BRANDS, INC., and<br>TARGET CORPORATION | ▲  **COURT USE ONLY**  ▲ |
| **ATTORNEYS FOR PLAINTIFF:**<br>Name:        Michael S. Burg, Reg. No. 7143<br>            Holly B. Kammerer, Reg. No. 21752<br>            Dimitri Kotzamanis, Reg. No. 52810<br>            Shane C. Fulton, Reg. No.  52212<br><br>Address:    Burg Simpson Eldredge Hersh & Jardine, P.C.<br>            40 Inverness Drive East<br>            Englewood, Colorado, 80112<br>Phone No.:  (303) 792-5595<br>Fax No.:    Declined pursuant to C.R.C.P. 5(b)<br>E-Mail:     mburg@burgsimpson.com<br>            hkammerer@burgsimpson.com<br>            dkotzamanis@burgsimpson.com<br>            sfulton@burgsimpson.com | **Case No.**<br><br>**Div:** |
| **COMPLAINT AND JURY DEMAND** ||

COMES NOW, Plaintiff Georgina Perez, by and through her attorneys, BURG SIMPSON

ELDREDGE HERSH & JARDINE, P.C., for her Complaint and Jury Demand, states, alleges, and

avers as follows:

## PARTIES

1.    Plaintiff Georgina Perez, f/k/a Georgina Barela, is an adult resident of Denver

County, Colorado, residing at 1671 S. Garfield St., Denver, CO  80210.

**Exhibit A**

2.      Defendant Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions (hereinafter "Sunbeam") is a foreign corporation with its principal office located at 2381 Executive Center Drive, Boca Raton, FL  33431 and its registered agent, Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, CO  80120.

3.      Defendant Newell Brands, Inc. (hereinafter "Newell") is a foreign corporation with its principal office located at 6655 Peachtree Dunwoody Road, Atlanta, GA 30328 and its registered agent, Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, CO  80120.

4.      Defendant Target Corporation (hereinafter "Target") is a foreign corporation with its principal office located at 1000 Nicollet Mall, Minneapolis, MN  55403 and its registered agent, C T Corporation System, located at 7700 E. Arapahoe Rd. Ste. 220, Centennial, CO  80112.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9.

6.      The Court has personal jurisdiction over Defendants by virtue of their commission of tortious actions in Colorado that caused injury and damages in Colorado to a Colorado resident, all pursuant to C.R.S. § 13-1-124(1)(b).

7.      Further, the Court has personal jurisdiction over Defendants by virtue of their operations and presence in Colorado, their transacting business in or directed at Colorado, their being at home in Colorado, and by otherwise purposefully availing themselves of the benefits and privileges of Colorado law by regular, continuous, and systematic contacts with Colorado.

8.      Defendants submitted to the jurisdiction of this Court by personally or through their agents doing the following acts:

    a.   Committing tortious acts within this state by selling and delivering defective products to persons, firms or corporations in this state via their distributors, dealers, wholesalers and brokers.  These defective products were used by consumers in Colorado in the ordinary course of commerce and trade;

    b.   Conducting and engaging in substantial business and other activities in Colorado by selling products to persons, firms or corporations in this state via their distributors, dealers, wholesalers and brokers.  Such products were used by consumers in Colorado in the ordinary course of commerce and trade;

    c.   By their acts and omissions, causing injury to Plaintiff while in Colorado.

    d.   Engaging in solicitation activities in Colorado to promote sale, consumption, use, maintenance, and/or repair of their products; and

    e.   Selling products with knowledge or reason to foresee that these products would be shipped in interstate commerce and would reach the market of Colorado users or consumers.

9.    Venue is proper in this Court, pursuant to C.R.C.P. 98(c)(1) and (c)(5), because the Plaintiff resides in Denver County and the tort giving rise to this action occurred in Denver County.

## GENERAL ALLEGATIONS

10.    This action arises from a catastrophic burn incident wherein Plaintiff suffered second and third-degree burns to 13% of her total body surface area and received approximately 5.3 square feet of amniotic and cadaveric skin grafts.

11.    On or about November 23, 2018, Plaintiff purchased a model number SCCPPC600V1 Crock-Pot-branded "Express Crock Multi-Cooker" (hereinafter "Subject Multi-Cooker") at a Target retail store located at 4301 E. Virginia Ave., Glendale, CO.

12.     Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

13.     According to Defendants' marketing materials, the model number SCCPPC600V1 Multi-Cooker is a kitchen appliance that "can cook meals up to 70% faster than traditional cooking, so you can spend less time in the kitchen and more time with friends and family."

14.     Defendants' marketing materials further provide: "Whether you're prepping your meal in the morning to let it cook all day, or you need an instant, healthy, home-cooked dish in under an hour—this one-pot pressure cooker does it all!"

15.     On June 3, 2019, the Plaintiff used the Subject Multi-Cooker to prepare beans.

16.     While using the Subject Multi-Cooker, Plaintiff followed the manual and cookbook associated with the Subject Multi-Cooker.

17.     Approximately twenty minutes after the beans had finished cooking, Plaintiff went to open the steam release valve on Subject Multi-Cooker pursuant to the manual instructions.

18.     The moment Plaintiff made contact with the Subject Multi-Cooker, it violently exploded, sending scalding hot beans and liquid into Plaintiff's face and chest, the ceiling, and the surrounding kitchen (hereinafter "the Incident").

19.     Shortly after the Incident, Plaintiff was admitted to Swedish Medical Center due to catastrophic and life-threatening injuries and burn.

20.     More specifically, Plaintiff suffered second-degree burns to her face, chest, abdomen, shoulders, and upper extremities.

21.     Additionally, Plaintiff suffered third-degree full-thickness burns to her breasts.

22.    The medical treatment received by Plaintiff was significant, excruciating, and traumatic; she received eight (8) amniotic skin grafts on her face and thirteen (13) cadaveric skin grafts to her neck, arms, breasts, chest, and abdomen.

23.    In total, Plaintiff received approximately 5.3 square feet of skin grafts.

24.    The third-degree full-thickness burns to Plaintiff's breasts required surgical debridement and electrocautery.

25.    According to the Abbreviated Burn Severity Index, Plaintiff faced a 10-20% probability of death due to the injuries she received as a result of the Incident.

26.    Plaintiff has suffered permanent scarring and disfigurement to her face, chest, abdomen, shoulders, breasts, and upper extremities.

27.    Plaintiff's breasts now exhibit keloid scarring and discoloration.

28.    As a result of the burns to her face, Plaintiff experiences tingling and a lack of sensation in her lips and mouth.

29.    Plaintiff suffered and continues to suffer from extreme itching on the areas of her body that were burned.

30.    Plaintiff suffered and continues to suffer from difficulty in regulating her body temperature due to severe damage to her sweat glands.

31.    During her recovery, Plaintiff missed time from work at Continental Cleaners in Denver, Colorado and later faced significant work restrictions.

## **THE RECALL**

32.    It is indisputable that model number SCCPPC600V1 Multi-Cookers, including the one purchased by Plaintiff, are defective and dangerous.

33.    Indeed, on November 24, 2020, Defendants Sunbeam and/or Newell recalled nearly one million model number SCCPPC600V1 Multi-Cookers.

34.    According to the Consumer Product Safety Commission (CPSC), Defendant Sunbeam had received 119 reports of lid detachment of model number SCCPPC600V1 Multi-Cookers, "resulting in 99 burn injuries ranging in severity from first-degree to third-degree burns."

35.    The recall information provided by the CPSC describes the defect and hazard as follows: "The recalled Crock-Pot multi-cooker can pressurize when the lid is not fully locked.  This can cause the lid to suddenly detach while the product is in use, posing burn risks to consumers from hot food and liquids ejected from the product."

36.    The nature of the aforementioned defect is especially notable given that product manual associated with the Subject Multi-Cooker falsely states, "If the lid is not shut correctly or if the Steam Release Valve is not in the 'Seal' position, the Multi-Cooker cannot gain pressure and an ERROR message will appear in the Display Screen" and "At the end of cooking, the lid cannot be unlocked until all the pressure is released."

37.    Defendants were aware of defects associated with model number SCCPPC600V1 Multi-Cookers at least as early as January of 2018.

38.    Unfortunately for Plaintiff, Defendants did not nothing to protect purchasers of model number SCCPPC600V1 Multi-Cookers from these known defects and did not initiate the aforementioned recall for nearly three years.

39.    Despite direct knowledge that model number SCCPPC600V1 Multi-Cookers were defective and had been the cause of numerous injuries to unwitting consumers, Defendants failed to take the appropriate action to properly notify or warn consumers, including Plaintiff.

40.    Multiple consumers and purchasers of model number SCCPPC600V1 Multi-
Cooker left detailed reviews and complaints on retail websites, including, but not limited to
Amazon, Defendant Target's website, and the "Crock-Pot" website operated by Defendants
Sunbeam and/or Newell.

41.    Verified purchaser "Angela" posted a complaint to the amazon.com website on
January 27, 2018, stating, "I used it twice and it literally exploded! There were sparks and then
food was everywhere. I think I got a faulty one. I'm going to try again."

42.    Defendants Sunbeam and/or Newell responded to this complaint, in part, "We are
sorry that this happened. We are always here to help."

43.    Elizabeth Eiland posted a complaint on the amazon.com retail website on February
21, 2018, stating, "After 2 months this product exploded on my daughter leaving her with 2 nd
degree burns on her face and chest. Would not recommend it at all. It needs to be recalled."

44.    Defendants Sunbeam and/or Newell responded to this complaint, in part, "We
definitely apologize for your daughter's experience. This is not typical of the Express Crock."

45.    Rebecca Gallardo posted a complaint on the amazon.com retail website on July 6,
2018, stating, "Please be careful when you open this pot. My daughters' exploded with minor
steam burns to her arms. We reported to Amazon who refunded our account. We believe it's a
malfunction within the device which let her open it when the signal was clear. It caused an electric
shortage in her kitchen. So pay attention using this item."

46.    Defendants Sunbeam and/or Newell responded to this complaint, in part, "We
apologize that your daughter had this experience. We take this matter very seriously."

47.    Verified purchaser Stacy Reynolds posted a complaint on the amazon.com retail
website on July 19, 2018, stating, "Would not recommend to anyone!!! IT BLEW UP! We were

cooking (luckily) on the other countertop and the lid exploded and all of the contents blew out. We had hot water splatter on a wall 6 feet away and on the ceiling. I got scalding water on my foot, thank goodness I still had shoes on or it would have been much worse. If we had been standing next to it, or heaven forbid had kids in the kitchen this accident would have been much worse. DO NOT BUY."

48.    A consumer identified as "Brook" posted a complaint on the "Crock-Pot" website in or about February of 2019, which stated, "About 1 hour into having the roast in the multi cooker I walked by and all of a sudden I heard a loud boom like something blew up. I saw the lid blow off the pot and roast flew all over me and my kitchen."

49.    Defendants Sunbeam and/or Newell responded, in part, "Our 6-Quart Express Crock Multi-Cooker was made with the highest quality materials and we expect them to last."

50.    This false statement was made by Defendant Sunbeam with the intent to deceive consumers, induce further sales of the defective multi-cooker product, and conceal the defective nature of model number SCCPPC600V1 multi-cookers.

51.    The same complaint from "Brook" and response were posted on Defendant Target's retail website in or about March of 2019, and Defendant Target had actual knowledge of the complaint, response, and defective nature of model number SCCPPC600V1 multi-cookers.

52.    Despite a multitude of reports of burn incidents, Defendants did nothing to protect or warn consumers that had unwittingly purchased defective model number SCCPPC600V1 Multi-Cookers.

### FIRST CLAIM FOR RELIEF
**Product Liability – (Strict Liability: Design Defect) – Defendants Sunbeam, Newell, and Target**

53.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this

Complaint as if fully set forth herein.

54.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

55.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

56.    The Subject Multi-Cooker was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

a.    The Subject Multi-Cooker was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

b.    The Subject Multi-Cooker was defectively designed in a manner that created an unreasonable propensity for it to explode during normal and foreseeable conditions;

c.    The Subject Multi-Cooker was defectively designed in that it fails to operate as marketed and advertised;

d.    The Subject Multi-Cooker was defectively designed in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

e.   The Subject Multi-Cooker was defectively designed in that the lid can be opened even when the Subject Multi-Cooker is under considerable pressure;

f.   The Subject Multi-Cooker was defectively designed in that it is capable of gaining pressure even when the lid was not shut correctly;

g.   The Subject Multi-Cooker was defectively designed in that it is capable of gaining pressure even when the Steam Release Valve was not in the 'Seal' position;

h.   The Subject Multi-Cooker was defectively designed in that it is capable of pressurizing even when the lid was not fully locked;

i.   The Subject Multi-Cooker was defectively designed in that its "safety sensors" are not capable of ensuring that the pressure remains within the set range; and

j.   The Subject Multi-Cooker was defectively designed in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

57.   The Subject Multi-Cooker had not been misused post-sale before it failed.

58.   The Subject Multi-Cooker had not been modified post-sale before it failed.

59.   The Subject Multi-Cooker was within its anticipated useful life when it failed.

60.   The Subject Multi-Cooker failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

61.   As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

**SECOND CLAIM FOR RELIEF**
**Product Liability – (Strict Liability: Manufacturing Defect) – Defendants Sunbeam, Newell, and Target**

62.     Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

63.     At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

64.     Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

65.     The Subject Multi-Cooker was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

a.     The Subject Multi-Cooker was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

b.     The Subject Multi-Cooker was defectively manufactured in a manner that created an unreasonable propensity for it to explode during normal and foreseeable conditions;

c.     The Subject Multi-Cooker was defectively manufactured in that it failed to operate as marketed and advertised;

d.  The Subject Multi-Cooker was defectively manufactured in that its materials and tolerances allow the lid to open even when the Subject Multi-Cooker is under considerable pressure;

e.  The Subject Multi-Cooker was defectively manufactured in that its materials and tolerances allow it to gain pressure even when the lid is not shut correctly;

f.  The Subject Multi-Cooker was defectively manufactured in that its materials and tolerances allow it to gain pressure even when the Steam Release Valve is not in the 'Seal' position;

g.  The Subject Multi-Cooker was defectively manufactured in that its materials and tolerances allow it to pressurize even when the lid is not fully locked;

h.  The Subject Multi-Cooker was defectively manufactured in that its "safety sensors" are not capable of ensuring that the pressure remains within the set range;

i.  The Subject Multi-Cooker was defectively manufactured in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

66.  The Subject Multi-Cooker had not been misused post-sale before it failed.

67.  The Subject Multi-Cooker had not been modified post-sale before it failed.

68.  The Subject Multi-Cooker was within its anticipated useful life when it failed.

69.  The Subject Multi-Cooker failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

70.  As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care,

permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

### THIRD CLAIM FOR RELIEF
**Product Liability – (Strict Liability: Failure to Warn) – Defendants Sunbeam, Newell, and Target**

71.　　Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

72.　　At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

73.　　Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

74.　　The Subject Multi-Cooker was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

     a.　The Subject Multi-Cooker was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

     b.　The Subject Multi-Cooker was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that

13

had an unreasonable propensity to explode during normal and foreseeable conditions;

c. The Subject Multi-Cooker fails to operate as marketed and advertised;

d. The Subject Multi-Cooker and its associated manual and marketing materials fail to alert users to the hazardous conditions described herein;

e. The Subject Multi-Cooker is defective due to the absence of warnings, instructions, stickers, placards, notices, or other documentation to alert users regarding the hazardous conditions described herein;

f. The Subject Multi-Cooker is defective due to inadequate warnings, instructions, stickers, placards, notices, or other documentation to alert users regarding the hazardous conditions described herein;

g. The Defendants failed to provide warnings of the aforementioned defects known or knowable in light of the prevailing scientific and technical knowledge;

h. The product manual associated with the Subject Multi-Cooker falsely states, "Once pressure increases, the lid cannot be opened. Safety sensors ensure the pressure remains within the set range.";

i. The product manual associated with the Subject Multi-Cooker falsely states, "At the end of cooking, the lid cannot be unlocked until all the pressure is released.";

j. The product manual associated with the Subject Multi-Cooker falsely states, "If the lid is not shut correctly or if the Steam Release Valve is not in the 'Seal' position, the Multi-Cooker cannot gain pressure and an ERROR message will appear in the Display Screen.";

k. The false statements contained within the product manual associated with the

Subject Multi-Cooker served to provide consumers such as Plaintiff with a false sense of security despite the Subject Multi-Cooker's dangerous and hazardous condition; and

l. At the time of the Incident on June 3, 2019, the Subject Multi-Cooker failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

75. The Subject Multi-Cooker had not been misused post-sale before it failed.

76. The Subject Multi-Cooker had not been modified post-sale before it failed.

77. The Subject Multi-Cooker was within its anticipated useful life when it failed.

78. The Subject Multi-Cooker failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

79. As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## FOURTH CLAIM FOR RELIEF
### Product Liability – (Negligence) – Defendants Sunbeam, Newell, and Target

80. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

81. At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

82. Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

83. As product manufacturers and sellers, Defendants owed a duty to Plaintiff and other consumers to properly design, test, maintain, assemble, source, import, manufacture, inspect, sell, advertise, market, and distribute the Subject Multi-Cooker in a reasonably safe condition so as to prevent the unreasonable risk of injury to persons.

84. Defendants breached the aforementioned duty by negligently designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and distributing the Subject Multi-Cooker when it was not in a reasonably safe condition for foreseeable use, as follows:

   a. The Subject Multi-Cooker was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

   b. The Subject Multi-Cooker was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that had an unreasonable propensity to explode during normal and foreseeable conditions;

   c. The Subject Multi-Cooker failed to operate as marketed and advertised;

   d. The Subject Multi-Cooker and its associated manual and marketing materials failed to alert users to the hazardous conditions described herein;

   e. The Subject Multi-Cooker was defective due to inadequate warnings or instructions, including warning stickers, placards, or other documentation to alert

users regarding the hazardous conditions described herein;

f.   The Defendants failed to provide warnings of the aforementioned defects known or
     knowable in light of the prevailing scientific and technical knowledge;

g.   The Defendants failed to warn consumers, including Plaintiff, that model number
     SCCPPC600V1 Multi-Cookers had caused nearly 100 burn injuries;

h.   The product manual associated with the Subject Multi-Cooker falsely states,
     "Once pressure increases, the lid cannot be opened. Safety sensors ensure the
     pressure remains within the set range.";

i.   The product manual associated with the Subject Multi-Cooker falsely states, "At
     the end of cooking, the lid cannot be unlocked until all the pressure is released.";

j.   The lid to the Subject Multi-Cooker is capable of being unlocked and opened
     even when the Subject Multi-Cooker is still pressurized;

k.   The Subject Multi-Cooker is capable of pressurizing even when the lid is not fully
     locked;

l.   The product manual associated with the Subject Multi-Cooker falsely states, "If the
     lid is not shut correctly or if the Steam Release Valve is not in the 'Seal' position,
     the Multi-Cooker cannot gain pressure and an ERROR message will appear in the
     Display Screen.";

m.   The Subject Multi-Cooker can become pressurized even when the lid is not shut
     correctly;

n.   The Subject Multi-Cooker can become pressurized even when the Steam Release
     Valve is not in the "Seal" position;

o.   The false statements contained within the product manual associated with the

Subject Multi-Cooker served to provide consumers such as Plaintiff with a false sense of security despite the Subject Multi-Cooker's dangerous and hazardous condition; and

p.  At the time of the Incident on June 3, 2019, the Subject Multi-Cooker failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

85.  As a direct, proximate, and foreseeable result of the Defendants' negligence, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## FIFTH CLAIM FOR RELIEF
### Product Liability – (Breach of Implied Warranty) – Defendants Sunbeam, Newell, and Target

86.  Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

87.  At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

88.  Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

89.     The Subject Multi-Cooker was defective, unreasonably dangerous, and not of merchantable quality at the time it was introduced to the stream of commerce.

90.     As merchants in the business of selling multi-cookers, Defendants impliedly warranted that the Subject Multi-Cooker would be suitable, merchantable, and fit for its ordinary and expected purpose.

91.     The Subject Multi-Cooker was not suitable, merchantable, or fit for its ordinary and expected purpose at the time of its manufacture and sale.

92.     Plaintiff is a person who was reasonably expected to use or be affected by the Subject Multi-Cooker.

93.     As a direct, proximate, and foreseeable result of the Defendants' breaches of implied warranties, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

### SIXTH CLAIM FOR RELIEF
### Breach of Express Warranty – Defendants Sunbeam, Newell, and Target

94.     Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

95.     At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

96.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

97.    Defendants Sunbeam and/or Newell expressly warranted that the Subject Multi-Cooker would be free from defects in material and workmanship for a period of one year from the date of purchase.

98.    On its "Crock-Pot" website, Defendants Sunbeam and/or Newell acknowledged and responded to a complaint from "Brook" in or about February of 2019 which stated, "About 1 hour into having the roast in the multi cooker I walked by and all of a sudden I heard a loud boom like something blew up. I saw the lid blow off the pot and roast flew all over me and my kitchen."

99.    Defendants Sunbeam and/or Newell responded to this complaint and warranted, "Our 6-Quart Express Crock Multi-Cooker was made with the highest quality materials and we expect them to last."

100.    On February 21, 2018, Elizabeth Eiland posted a complaint the amazon.com retail website stating, "After 2 months this product exploded on my daughter leaving her with 2 nd degree burns on her face and chest. Would not recommend it at all. It needs to be recalled."

101.    Defendants Sunbeam and/or Newell responded to this complaint and warranted, "This is not typical of the Express Crock."

102.    On its retail website, Defendant Target warranted that the Subject Multi-Cooker was equipped with an "airtight locking lid."

103.    Plaintiff is a person who was reasonably expected to use or be affected by the Subject Multi-Cooker.

104.    The Subject Multi-Cooker was not as warranted by Defendants, as it was defective,

dangerous, unfit for its intended purpose, was not equipped with an airtight locking lid, was prone to causing explosions and burns, was not made with high quality materials, was not expected to last, and injured Plaintiff as described herein.

105.    As a direct, proximate, and foreseeable result of the Defendants' breaches of warranties, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

### SEVENTH CLAIM FOR RELIEF
### Colorado Consumer Protection Act (C.R.S. § 6-1-101) – Defendants Sunbeam, Newell, and Target

106.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

107.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, pressure cookers and multi-cookers.

108.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Multi-Cooker that caused injury to Plaintiff.

109.    The Defendants fraudulently, willfully, knowingly, intentionally, and in bad faith engaged in the following deceptive trade practices:

a.    Defendants sold and continued to sell defective and dangerous model number SCCPPC600V1 Multi-Cookers to unwitting consumers, including Plaintiff, despite

actual knowledge of dangerous defects;

b.  Defendants made false representations with respect to the characteristics, uses, and benefits of the model number SCCPPC600V1 Multi-Cooker;

c.  Defendants made false representations that the model number SCCPPC600V1 Multi-Cooker was of a particular standard, quality, and/or grade when they knew or should have known that it was of another;

d.  The Defendants failed to warn consumers, including Plaintiff, that model number SCCPPC600V1 Multi-Cookers had caused nearly 100 burn injuries;

e.  The Defendants concealed the fact that model number SCCPPC600V1 Multi-Cookers had caused nearly 100 burn injuries;

f.  Defendants made warranties of such a nature as to have the capacity and tendency of misleading purchasers or prospective purchasers into believing that the model number SCCPPC600V1 Multi-Cooker had a greater degree of serviceability, durability, or performance capability in actual use than was true in fact;

g.  Defendants failed to disclose material information concerning the defective and dangerous propensities of model number SCCPPC600V1 Multi-Cookers with the intent of inducing consumers into purchasing said products;

h.  Defendants deliberately misled consumers and induced them to purchase model number SCCPPC600V1 Multi-Cookers despite direct knowledge of their defective and dangerous propensities; and

i.  Defendants failed to conduct a reasonably prompt recall of model number SCCPPC600V1 Multi-Cooker despite direct knowledge of their defective and dangerous propensities.

110.    The aforementioned deceptive trade practices occurred in the course of Defendants' businesses.

111.    The aforementioned deceptive trade practices impacted the public as actual or potential consumers of the model number SCCPPC600V1 Multi-Cooker.

112.    As a direct, proximate, and foreseeable result of the Defendants' deceptive trade practices, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## EIGHTH CLAIM FOR RELIEF
### Fraud – Defendants Sunbeam, Newell, and Target

113.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

114.    Defendants sold and continued to sell defective and dangerous model number SCCPPC600V1 Multi-Cookers to unwitting consumers, including Plaintiff, despite actual knowledge of dangerous defects associated with model number SCCPPC600V1 Multi-Cookers.

115.    Defendants deliberately misled consumers, including Plaintiff, with the intent to induce them to purchase model number SCCPPC600V1 Multi-Cookers, despite direct knowledge of their defective and dangerous propensities.

116.    Defendants knowingly and actively concealed information pertaining to the dangerous defects associated with model number SCCPPC600V1 Multi-Cookers and the Subject Multi-Cooker with the intent of creating a false impression in the mind of Plaintiff and inducing her to purchase the Subject Multi-Cooker.

117.    Defendants knowingly and actively concealed dozens of instances of burn injury incidents resulting from the defects associated with model number SCCPPC600V1 Multi-Cookers with the intent of creating a false impression in the mind of Plaintiff and inducing her to purchase the Subject Multi-Cooker.

118.    Defendants knowingly made false and material statements of fact pertaining to the Subject Multi-Cooker, including, but not limited to:

a.    "Once pressure increases, the lid cannot be opened. Safety sensors ensure the pressure remains within the set range.";

b.    "At the end of cooking, the lid cannot be unlocked until all the pressure is released.";

c.    "If the lid is not shut correctly or if the Steam Release Valve is not in the 'Seal' position, the Multi-Cooker cannot gain pressure and an ERROR message will appear in the Display Screen.";

d.    "We definitely apologize for your daughter's experience. This is not typical of the Express Crock." [In response to a complaint that a model number SCCPPC600V1 Multi-Cooker caused a burn injury]; and

e.    "Our 6-Quart Express Crock Multi-Cooker was made with the highest quality materials and we expect them to last." [In response to a complaint that a model number SCCPPC600V1 Multi-Cooker caused a burn injury].

119.    Plaintiff reasonably and justifiably relied upon the aforementioned statements of fact.

120.    As a direct, proximate, and foreseeable result of the Defendants' fraud, Plaintiff suffered catastrophic burns requiring significant and costly past and future medical care,

permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants for relief as follows:

1. Economic damages, including but not limited to, past and future medical expenses, lost income, lost earning capacity, and out-of-pocket expenses;

2. Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, mental and emotional distress and anguish, inconvenience;

3. Damages for physical impairment and disfigurement;

4. All other compensatory damages caused by Defendants' actions and inactions, to be proven at trial;

5. Civil and statutory penalties;

6. Three times the amount of actual damages sustained, costs, and attorney fees as provided by C.R.S. § 6-1-113(2).

7. Pre-judgment and post-judgment interest as provided for by law;

8. Attorney fees, costs, and expenses of this action as provided for by law; and

9. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 28th day of May, 2021.

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**
*(Original signature on file at Burg Simpson
Eldredge Hersh & Jardine, P.C.)*


*/s/ Michael S. Burg*
Michael S. Burg, Reg. No. 7143

25

Holly B. Kammerer, Reg. No. 21752
Dimitri Kotzamanis, Reg. No. 52810
Shane C. Fulton, Reg. No.  52212
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
*Attorneys for Plaintiff*

## AFFIDAVIT OF SERVICE

State of Colorado                    County of Denver

Case Number: 2021CV31704

**Plaintiff: GEORGINA PEREZ**
v.
**Defendant: SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER SOLUTIONS, NEWELL BRANDS, INC., and TARGET CORPORATION**

DATE FILED: June 17, 2021 3:52 PM
FILING ID: F44EB14C67271
CASE NUMBER: 2021CV31704
District Court

For:
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

Received by On Time Legal Process Serving LLC to be served on **Sunbeam Products, Inc., d/b/a Jarden Consumer Solutions, 1900 W. Littleton Blvd, Littleton, CO 80120.**

I, Linda Oswald, being duly sworn, depose and say that on the **15th day of June, 2021** at **8:20 am, I:**

**Served,** by delivering a true copy of the **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER and DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND** with the date and hour of service endorsed thereon by me, to: **Cole Stender** as Clerk, at Corporation Service Company, The Registered Agent, for: Sunbeam Products, Inc., d/b/a Jarden Consumer Solutions, at the address of: **1900 W. Littleton Blvd, Littleton, CO 80120,** and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the 15th day of June, 2021 by the affiant who is personally known to me.

NOTARY PUBLIC

**Linda Oswald**
Process Server

**On Time Legal Process Serving LLC**
4815 Brown Valley Ln
Colorado Springs, CO 80918
(303) 993-8093

Our Job Serial Number: OSW-2021001189

KEVIN OSWALD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084019561
MY COMMISSION EXPIRES JULY 03, 2024

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1k

# AFFIDAVIT OF SERVICE

State of Colorado                                County of Denver

Case Number: 2021CV31704

DATE FILED: June 17, 2021 3:32 PM
FILING ID: F44EB14C67271
CASE NUMBER: 2021CV31704

District Court

Plaintiff: GEORGINA PEREZ
v.
Defendant: SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER
SOLUTIONS, NEWELL BRANDS, INC., and TARGET CORPORATION

For:
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

Received by On Time Legal Process Serving LLC to be served on **Newell Brands, Inc., 1900 W. Littleton Blvd,
Littleton, CO 80120**.

I, Linda Oswald, being duly sworn, depose and say that on the **15th day of June, 2021** at **8:20 am, I:**

**Served,** by delivering a true copy of the **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND;
DELAY REDUCTION ORDER and DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING
OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND** with
the date and hour of service endorsed thereon by me, to: **Cole Stender** as **Clerk, at Corporation Service
Company, The Registered Agent,** for: **Newell Brands, Inc.**, at the address of: **1900 W. Littleton Blvd, Littleton,
CO 80120**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the _15th_ day
of _June_, _2021_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

**Linda Oswald**
Process Server

**On Time Legal Process Serving LLC**
**4815 Brown Valley Ln**
**Colorado Springs, CO 80918**
**(303) 993-8093**

Our Job Serial Number: OSW-2021001191

KEVIN OSWALD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084019561
MY COMMISSION EXPIRES JULY 03, 2024

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1k

## AFFIDAVIT OF SERVICE

State of Colorado                    County of Denver

Case Number: 2021CV31704

DATE FILED: June 17, 2021 3:32 PM
FILING ID: F44EB14C67271
CASE NUMBER: 2021CV31704

District Court

Plaintiff: GEORGINA PEREZ
v.
Defendant: SUNBEAM PRODUCTS, INC. d/b/a JARDEN CONSUMER
SOLUTIONS, NEWELL BRANDS, INC., and TARGET CORPORATION

For:
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

Received by On Time Legal Process Serving LLC to be served on **Target Corporation, 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112.**

I, Linda Oswald, being duly sworn, depose and say that on the **15th day of June, 2021** at **8:02 am**, I:

**Served,** by delivering a true copy of the **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER and DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND** with the date and hour of service endorsed thereon by me, to: **Patrick Mattis** as **Intake Specialist**, at **Registered Agent., The Corporation Company, The Registered Agent,** for: **Target Corporation**, the address of: **7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112,** and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action.

Subscribed and Sworn to before me on the 15th day
of June 2021 by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

*Linda Oswald*
Linda Oswald
Process Server

**On Time Legal Process Serving LLC**
4815 Brown Valley Ln
Colorado Springs, CO 80918
(303) 993-8093

Our Job Serial Number: OSW-2021001190

KEVIN OSWALD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084019561
MY COMMISSION EXPIRES JULY 03, 2024

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1k