IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01915-PAB-KAS

GEORGINA PEREZ,

      Plaintiff,

v.

SUNBEAM PRODUCTS, INC., d/b/a JARDEN SOLUTIONS,
NEWELL BRANDS, INC., and
TARGET CORPORATION,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on Defendant Newell Brands, Inc.'s Rule 56 Motion for Summary Judgment [Docket No. 50]. Plaintiff Georgina Perez filed a response, Docket No. 53, and Newell Brands, Inc. ("Newell") filed a reply. Docket No. 55. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.    BACKGROUND[1]

Ms. Perez is a 47-year-old woman who lives in Denver, Colorado. Docket No. 50 at 2, ¶ 1. Newell is a corporation whose principal office is located in Atlanta, Georgia. *Id*. at 3, ¶ 2. Newell is the parent company of defendant Sunbeam Products, Inc. ("Sunbeam"). *Id*., ¶ 3. Sunbeam does business as Jarden Consumer Solutions. *Id*. Sunbeam is a corporation whose principal office is located in Boca Raton, Florida. *Id*., ¶ 4.

_____

[1] The following facts are undisputed unless otherwise indicated.

On or about November 23, 2018, Ms. Perez purchased a model number SCCPPC600V1 Crock-Pot-branded "Express Crock Multi-Cooker" (the "Multi-Cooker") at a Target Corporation ("Target") retail store located at 4301 E. Virginia Ave., Glendale, Colorado.  *Id*., ¶ 5.  The Multi-Cooker has a date code of L257JN, indicating that it was manufactured on September 14, 2018.  *Id*., ¶ 6.  The Multi-Cooker was manufactured by Jiangmen Nanguang Electrical Appliance Co., Ltd. ("Jiangmen").  *Id*., ¶ 8.

On June 3, 2019, Ms. Perez used the Multi-Cooker to prepare food.  *Id*. at 4, ¶ 10.  When Ms. Perez touched the lid to open the Multi-Cooker, the lid came off and Ms. Perez was burned by the contents of the Multi-Cooker.  *Id*., ¶ 13.  Ms. Perez called an ambulance and was subsequently admitted to Swedish Hospital with severe burns. *Id*., ¶ 16.

## II.    LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III.   ANALYSIS

Ms. Perez asserts claims against all defendants for strict products liability design defect; strict products liability manufacturing defect; strict products liability failure to warn; negligence; breach of implied warranty; breach of express warranty; violation of the Colorado Consumer Protection Act; and fraud. Docket No. 78 at 8-25. Ms. Perez and Newell agree that Colorado law applies to the claims in this case. The Court will therefore operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Newell argues that it is entitled to summary judgment on all of Ms. Perez's claims because it cannot be held liable under Colorado law for a products liability action given that (A) Newell is not a "manufacturer" as defined by Colo. Rev. Stat. § 13-21-401; (B) Newell is not a "seller" as defined by Colo. Rev. Stat. § 13-21-401; and (C) Newell is not an alter ego of its subsidiary Sunbeam.  Docket No. 50 at 5.

### A.  Manufacturer under Colo. Rev. Stat. § 13-21-401

Newell argues that it cannot be held liable as a "manufacturer" of the allegedly defective Multi-Cooker.  *Id.*  Under the Colorado Products Liability Act ("CPLA"), a "products liability action" is defined as

> any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.

Colo. Rev. Stat. § 13-21-401(2); *see also Heinrich v. Master Craft Eng'g, Inc.*, 131 F. Supp. 3d 1137, 1152-53 (D. Colo. 2015).  A "manufacturer" is defined as

> a person or ***entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer***.  The term includes any seller who has actual knowledge of a defect in a product or a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.  The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.  A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or

control, in some significant manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is.

Colo. Rev. Stat. § 13-21-401(1) (emphasis added); *see also Heinrich*, 131 F. Supp. 3d at 1153.  "The intent of this section is to extend liability to those entities involved in the production of the product or otherwise in control [of] the production process."  *Yoder v. Honeywell Inc.*, 900 F. Supp. 240, 246 (D. Colo. 1995), *aff'd*, 104 F.3d 1215 (10th Cir. 1997).  "Section 13-21-401 contemplates the possibility that a product can have more than one manufacturer."  *Heinrich*, 131 F. Supp. 3d at 1153.

Newell argues that it cannot be held liable as a "manufacturer" as defined in Colo. Rev. Stat. § 13-21-401(1) because Newell did not manufacture or design the Multi-Cooker.  Docket No. 50 at 5-6.  Newell argues that Sunbeam designed the Multi-Cooker with the manufacturer Jiangmen.  *Id*. at 3, ¶¶ 7, 9.[2]  Newell asserts that Ms. Perez has not established any evidence suggesting that Newell was involved in the production of the Multi-Cooker or that Newell was in control of the design, production, or manufacturing processes.  *Id*. at 6.  Newell argues that this case is similar to *Yoder*, 900 F. Supp. at 246.  *Id*.; *see also* Docket No. 55 at 5.

Ms. Perez responds that Newell is a "manufacturer" under Colo. Rev. Stat. § 13-21-401(1) due to its "involvement in the design process, including its role in redesigning

---

[2] In support of this fact, Newell cites "Newell's Responses to Plaintiff's Interrogatories[,] attached hereto as Exhibit E."  *See* Docket No. 50 at 3, ¶¶ 6-7, 9 (citing Docket No. 50-5).  However, Exhibit E is "Sunbeam Products, Inc.'s Answers to Plaintiff's First Set of Discovery."  *See* Docket No. 50-5 at 2.  The discovery questions asked Sunbeam to name any people or entities that participated in the "design" and "manufacture" of "SCCPPC600V1 PRESSURE COOKERS."  *Id*. at 3.  Sunbeam's answer states, "Jiangmen Nanguang Electrical, Appliance Industrial Co., Ltd."  *Id*.  It is unclear whether Newell intended to cite Sunbeam's answers or whether Newell attached the wrong exhibit to its motion.

the product early on in response to initial reports of the product's defects."  Docket No.
53 at 6-7.  Ms. Perez does not dispute that Sunbeam and Jiangmen had a "significant
role in designing and producing the subject cooker."  *Id*. at 7-8.  However, Ms. Perez
argues that

> Newell's involvement includes extensive authorizations of both design changes
> and actual production of the product.  Defendant Newell also appeared to be
> particularly focused on monitoring product complaints and handling the product's
> re-design to address safety issues, including adjusting the product's specification
> to lengthen the locking pin that secures the lid and address other tolerances
> around the lid. . . . [B]ecause Newell was directly involved in the design of the
> specific component that appears to have failed, it is properly considered a
> manufacturer in this case.

*Id*. at 8.[3]  Ms. Perez cites a Newell internal document entitled "VoC Feedback and QA
Activities," which included customer complaints regarding the Multi-Cooker.  *Id*. at 4, ¶ 3
(citing Docket No. 53-6).  Ms. Perez cites evidence that the "Production Start
Authorization Newell Internal Approval Form" for the Multi-Cooker, dated May 18, 2018,
contains the Newell logo and states, "[t]his project is to change the material of [the] lid
lock lever from Aluminum to Stainless steel, add 0.5mm for length of the lid lock pin
head, adjust the dimension tolerance of the middle pot rim close to its upper limit level,
[and] change the bobber valve to red color."  *Id*., ¶ 8 (citing Docket No. 53-11).
Additionally, Ms. Perez argues that the "Product Start Authorization Form" for the Multi-
Cooker lists Tom Guyett as the project manager and that Mr. Guyett identifies himself
as a Newell employee on LinkedIn.  *Id*., ¶ 7 (citing Docket Nos. 53-9, 53-10).  Ms. Perez
also cites evidence that the Newell logo appears on multiple "Test Data Sheets" for the

---

[3] Furthermore, Ms. Perez argues that Newell personnel were involved in
approving the Multi-Cooker's manual, Newell handled safety complaints from sellers,
and Newell worked with federal regulators to manage the recall.  Docket No. 53 at 8.

Multi-Cooker, dated August 31, 2017, and that the "Design Validation Plan and Reports" for the Multi-Cooker are Newell internal documents.  *Id*. at 5, ¶¶ 10-11 (citing Docket Nos. 53-13, 53-14).

In its reply, Newell repeats its argument that Ms. Perez has not established any evidence that Newell produced, designed, or manufactured the product.  Docket No. 55 at 5.  However, Newell does not address why the cited exhibits fail to demonstrate that Newell participated in the design or production of the Multi-Cooker.[4]

The Court finds that Ms. Perez has raised a genuine dispute of material fact regarding whether Newell participated in the design or production of the Multi-Cooker. The May 2018 "Production Start Authorization Newell Internal Approval Form" for the Multi-Cooker states that "[t]his project is to change the material of [the] lid lock lever from Aluminum to Stainless steel, add 0.5mm for length of the lid lock pin head, [and] adjust the dimension tolerance of the middle pot rim close to its upper limit level." Docket No. 53-11.  That internal document contains Newell's logo in the top left corner. *See id*.  This evidence creates a genuine dispute of material fact regarding whether Newell designed or participated in the production of the Multi-Cooker's lid and locking mechanism.  The Newell logo appears on "Test Data Sheets" and the "Design Validation Plan and Reports" for the Multi-Cooker.  Docket No. 53-13 at 1-14; Docket No. 53-14 at 1-7.  Ms. Perez has also cited evidence creating a dispute of fact regarding whether a Newell employee was a project manager for the Multi-Cooker project.  *See* Docket No. 53-9 at 1; Docket No. 53-10 at 1, 4.

---

[4] In its reply, Newell does not dispute the authenticity of Ms. Perez's cited exhibits.  *See* Docket No. 55 at 3-4, ¶¶ 3, 7-8, 10-11.

The Court finds that this case is distinguishable from *Yoder*.  In *Yoder*, the court held that the defendant parent corporation was not a "manufacturer" under Colo. Rev. Stat. § 13-21-401(1) because the plaintiffs "proffer[ed] no evidence that [the parent corporation] manufactured, sold or distributed the product, provided specifications for the production of the product, or exercised significant control over the production of the product."  *Yoder*, 900 F. Supp. at 246.  Here, Ms. Perez has provided evidence suggesting that Newell participated in the design and production of the Multi-Cooker. Accordingly, *Yoder* is not on point.

Because Ms. Perez has created a genuine dispute of fact as to whether Newell "designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer," there is a genuine dispute of fact regarding whether Newell is considered a "manufacturer" of the Multi-Cooker under the statute.  *See* Colo. Rev. Stat. § 13-21-401(1); *cf. Heinrich*, 131 F. Supp. 3d at 1155-56 (denying summary judgment on the issue of whether a wholesaler was a "manufacturer" under the statute because there was a genuine dispute of material fact as to whether the wholesaler provided the manufacturer technical specifications for the product).[5]  Accordingly, the Court denies this portion of Newell's motion for summary judgment.

---

[5] Additionally, the fact that Jiangmen manufactured the Multi-Cooker does not mean that Newell cannot also be considered a "manufacturer" under Colo. Rev. Stat. § 13-21-401(1).  *See Heinrich*, 131 F. Supp. 3d at 1153 ("Section 13-21-401 contemplates the possibility that a product can have more than one manufacturer.").

### B.  Seller under Colo. Rev. Stat. § 13-21-401

Newell argues that it cannot be held liable as the "seller" of the allegedly defective Multi-Cooker because Newell is not a seller of the product.  Docket No. 50 at 7.  The CPLA defines a seller as "any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption."  Colo. Rev. Stat. § 13-21-401(3).  Newell argues that it is undisputed that Ms. Perez purchased the Multi-Cooker from Target. Docket No. 50 at 7.  Newell contends that Ms. Perez has produced no evidence suggesting that Newell sells or sold the allegedly defective Multi-Cooker.  *Id*.  In her response, Ms. Perez did not respond to this argument.

It is undisputed that Ms. Perez purchased the Multi-Cooker from a Target store in Glendale, Colorado.  *Id*. at 3, ¶ 5.  Ms. Perez has provided no evidence suggesting that Newell sold or leased the Multi-Cooker for "resale, use, or consumption."  *See* Colo. Rev. Stat. § 13-21-401(3).  Accordingly, the Court grants this portion of Newell's motion and finds that Newell cannot be held liable for plaintiff's claims as a "seller" of the Multi-Cooker under Colo. Rev. Stat. § 13-21-401(3).

### C.  Alter Ego of Sunbeam

Newell argues that it cannot be held liable for plaintiff's claims under an alter ego theory.  Docket No. 50 at 7-8.  Under Colorado law, "in order to hold a parent corporation liable for the torts of its subsidiary, a plaintiff must show that the corporate structure was used in such a way that 'recognition of the separate corporate entity would result in injustice.'"  *Yoder v. Honeywell Inc*., 104 F.3d 1215, 1221 (10th Cir. 1997) (quoting *Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc*., 878 F.2d 1259,

1262 (10th Cir. 1989)).  Courts evaluate the following ten factors in determining whether a parent corporation should be held liable for the acts of its subsidiary based on the "alter ego" doctrine:

> (1) the parent corporation owns all or majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; [and] (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Yoder*, 900 F. Supp. at 244 (quoting *Lowell Staats Min. Co., Inc.*, 878 F.2d at 1262-63).

Newell argues that it cannot be held liable under an alter ego theory because Ms. Perez has not pled or established any facts suggesting that Newell is an alter ego for Sunbeam.  Docket No. 50 at 7-8.  In her response, Ms. Perez does not address Newell's alter ego arguments or present any evidence related to the alter ego factors discussed in *Yoder*.  A plaintiff's failure to address a claim or theory in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor.  *See Hinsdale v. City of Liberal, Kan*., 19 F. App'x 749, 768-69 (10th Cir. 2001) (unpublished) (affirming district court's holding that plaintiff abandoned his equal protection claim by failing to address the claim in his response to the summary judgment motion).  Accordingly, the Court grants this portion of Newell's motion and finds that Newell is not liable for plaintiff's claims under an alter ego theory.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Newell Brands, Inc.'s Rule 56 Motion for Summary

Judgment [Docket No. 50] is **GRANTED in part** and **DENIED in part**.


DATED September 29, 2023.


BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge