IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01915-PAB-KAS

GEORGINA PEREZ,

    Plaintiff,

v.

SUNBEAM PRODUCTS, INC., d/b/a JARDEN SOLUTIONS,
NEWELL BRANDS, INC., and
TARGET CORPORATION,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on Target Corporation's Motion for Summary Judgment [Docket No. 49]. Plaintiff Georgina Perez filed a response, Docket No. 54, and Target Corporation ("Target") filed a reply. Docket No. 56. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.  BACKGROUND**[1]

Ms. Perez allegedly purchased a Multi-Cooker[2] from a Target store in Glendale, Colorado on November 23, 2018. Docket No. 49 at 2, ¶ 1.[3] On or about June 3, 2019, Ms. Perez used the Multi-Cooker to prepare beans and claims she was injured when

---

[1] The following facts are undisputed unless otherwise indicated.
[2] The parties state that the Multi-Cooker is a model SCCPPC600V1 Crock-Pot-branded "Express Crock Multi-Cooker." Docket No. 49 at 1; Docket No. 78 at 3, ¶ 10.
[3] Target states that it only assumes the validity of this fact for purposes of the summary judgment motion, but it reserves the right to dispute the fact at trial. Docket No. 49 at 2 n.1, 5.

the Multi-Cooker exploded, causing hot beans and liquid to come into contact with her, resulting in second-degree burns (the "subject incident").  *Id.*, ¶ 2.

Target refers to the Multi-Cooker as a "national brand" product, meaning it was not a Target-branded item, and it was sold by other retailers, such as Wal-Mart or Amazon, in addition to Target.  *Id.*, ¶ 3.  Target did not design, assemble, fabricate, produce, construct, or otherwise prepare the Multi-Cooker prior to the sale of the product to a customer of Target.  *Id.*, ¶ 4.  Target did not create or furnish the manufacturer of the Multi-Cooker with specifications for the Multi-Cooker or any specifications relevant to the alleged defect in the Multi-Cooker.  *Id.* at 3, ¶ 6.  Target exercised no control over the manufacturing process for the Multi-Cooker.  *Id.*, ¶ 7.  Target did not alter or modify the Multi-Cooker in any manner after the product came into its possession.  *Id.*, ¶ 8.  Target is not owned, in whole or part, by the manufacturer of the Multi-Cooker, and does not own, in whole or part, the manufacturer.  *Id.*, ¶ 9.

Before the sale of the Multi-Cooker to Ms. Perez and the subject incident, Target received one customer report wherein the customer was burned by the contents of his Multi-Cooker.  *Id.*, ¶ 11.[4]  Target received this customer's report in May 2018.  Docket

---

[4] Ms. Perez's response to this fact states, "Plaintiff admits that Target received a May 23, 2018 complaint as described, but denies that it only received one such complaint.  Target's discovery responses combined with Tracie Horihan's deposition testimony suggest that Target received four complaints involving injuries regarding the subject cooker, and countless others reporting various problems with their cookers."  Docket No. 54 at 3, ¶ 11.  Ms. Perez fails to cite any evidence to support her denial of the fact that Target received only one complaint before the sale of the Multi-Cooker to Ms. Perez, in violation of the Court's Practice Standards.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial.").  The Practice Standards state that "[f]ailure to follow these procedures . . . may cause the Court to deem certain facts as admitted."  *Id.*, § III.F.3.b.ix.  Accordingly, the Court deems this fact admitted.

No. 54 at 6, ¶ 13, Docket No. 56 at 3, ¶ 13.[5]  Target reported this information to the Consumer Product Safety Commission and Target's vendor.  Docket No. 49 at 3, ¶ 12.[6]  No other entity or person communicated any defect in the Multi-Cooker model to Target at any time before Ms. Perez's purchase of the Multi-Cooker and the subject incident.  *Id*. at 3-4, ¶ 15.[7]

---

[5] Target does not include this fact in its undisputed facts section.  However, the Court finds that the parties do not dispute that Target received this customer's report in May 2018.  *See generally* Docket No. 54 at 3, ¶ 11 ("Plaintiff admits that Target received a May 23, 2018 complaint as described"); Docket No. 56 at 7 (discussing "the incident reported to Target in May 2018"); Docket No. 54-3 at 1-2.

[6] Target attached a copy of its notification to the vendor as Exhibit C, Docket No. 49-3, which includes the customer's description of the incident.  Docket No. 49 at 3, ¶ 13.  Ms. Perez does not challenge the authenticity of Exhibit C.  *See* Docket No. 54 at 4, ¶ 13.

[7] Ms. Perez's response to this fact states, "DENIED.  Target received four reports of injuries resulting from the cooker, along with numerous others communicating various issues with the cooker."  Docket No. 54 at 4, ¶ 15 (citing Docket No. 54-3; Docket No. 54-4).  Docket No. 54-3 identifies four complaints that Target received regarding the Multi-Cooker, including the May 2018 report.  Docket No. 54-3 at 1-12.  However, the other three complaints in the exhibit were reported to Target on August 29, 2020; August 15, 2020; and November 30, 2020.  *Id*. at 5, 8, 11.  These reports occurred after Ms. Perez purchased the Multi-Cooker on November 23, 2018 and therefore do not contradict defendant's proffered undisputed fact.  Furthermore, Ms. Perez also cites Docket No. 54-4, an exhibit containing 917 pages, to support her denial of Target's fact.  Ms. Perez provides no citation to a page number in this exhibit, which violates the Court's Practice Standards.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ii-iv.  The Court is not required to sift through Ms. Perez's voluminous exhibit to identify whether her denial is properly supported by the record.  *See Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc*., 781 F.3d 1226, 1231 (10th Cir. 2015) ("the district court acted well within its discretion in setting aside the unwieldy mass of data that [the party] attempted to rely on without providing correct, specific references in accordance with the local rules").  Accordingly, the Court deems this fact undisputed.

## II.     LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a

4

motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Ms. Perez asserts claims against all defendants for strict products liability design defect; strict products liability manufacturing defect; strict products liability failure to warn; negligence; breach of implied warranty; breach of express warranty; violation of the Colorado Consumer Protection Act; and fraud. Docket No. 78 at 8-25. Ms. Perez and Target agree that Colorado law applies to the claims in this case. The Court will therefore operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption."). Target argues that it is entitled to summary judgment on all claims because it is an "innocent seller" of the Multi-Cooker under Colo. Rev. Stat. § 13-21-402. Docket No. 49 at 1-2, 7.

The "innocent seller" provision of the Colorado Products Liability Act provides that "[n]o product liability action[8] shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." Colo. Rev.

---

[8] A "products liability action" is defined under the statute as "any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product." Colo. Rev. Stat. § 13-21-401(2).

Stat. § 13-21-402(1) (footnote added).[9]  A "seller" is defined as "any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption."  Colo. Rev. Stat. § 13-21-401(3).  Pursuant to the statute,

> "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer.  The term includes ***any seller who has actual knowledge of a defect in a product*** or a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.  The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.  A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or control, in some significant manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is.

Colo. Rev. Stat. § 13-21-401(1) (emphasis added).  The relevant timeframe for determining whether a seller is a manufacturer by virtue of having "actual knowledge of a defect in a product" is whether the seller had actual knowledge of a defect at the time the product was sold to the plaintiff.  *See Mills v. FCA US, LLC*, No. 18-cv-01891-MSK-STV, 2018 WL 11386606, at *3 (D. Colo. Nov. 29, 2018).  The purpose of Colorado's innocent seller statute is to "shield[] a defendant [who] has done nothing more than sell

---

[9] Many states have similar "innocent seller" statutes.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 82.003; Ind. Code Ann. § 34-20-2-3; Md. Code Ann., Cts. & Jud. Proc. § 5-405; 735 Ill. Comp. Stat. Ann. 5/2-621; Miss. Code. Ann. § 11-1-63(h); W. Va. Code Ann. § 55-7-31(b); N.D. Cent. Code Ann. § 28-01.3-04; Kan. Stat. Ann. § 60-3306.

6

a defective product." *Bullock, ex rel. Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-00491-PAB-MEH, 2010 WL 1380724, at *1 (D. Colo. Mar. 30, 2010).

Target argues that it is merely a "seller" and is not a "manufacturer" of the Multi-Cooker under Colo. Rev. Stat. § 13-21-401(1) and therefore the innocent seller provision bars plaintiff's claims. Docket No. 49 at 5-7. It is undisputed that Target did not design, assemble, fabricate, produce, construct, or otherwise prepare the Multi-Cooker prior to its sale; Target did not create or furnish the manufacturer of the Multi-Cooker with specifications for the Multi-Cooker; Target exercised no control over the manufacturing process for the Multi-Cooker; Target did not alter or modify the Multi-Cooker in any manner after the product came into its possession; and Target is not owned, in whole or part, by the manufacturer of the Multi-Cooker, and does not own, in whole or part, the manufacturer. *Id*. at 2-3, ¶¶ 4, 6-9. However, the parties dispute whether Target qualifies as a manufacturer by virtue of having "actual knowledge" of a "defect" in the Multi-Cooker. *Compare* Docket No. 49 at 6 *with* Docket No. 54 at 8-11.

Target argues that it had no actual knowledge of a defect in the Multi-Cooker because, before Ms. Perez purchased the Multi-Cooker, "Target had only one incident in which a customer claimed being injured when using the same model Multi-Cooker." Docket No. 49 at 6. Moreover, Target argues that the "customer's description of his incident identified no defect with the model Multi-Cooker but rather just described the incident." *Id*.

Ms. Perez responds that the report Target received in May 2018 is "more than sufficient to provide 'actual knowledge' under Colorado law." Docket No. 54 at 9. Ms. Perez asserts that the May 2018 report stated that the Multi-Cooker's pot lid exploded,

7

causing severe burns to the customer's arm which required medical attention.  *Id*. at 6, ¶ 13.  Ms. Perez contends that the May 2018 report is "markedly similar" to what happened to her.  *Id*. at 9.  Ms. Perez also asserts that Target was willfully blind to any potential defect, which is sufficient to constitute actual knowledge.  *Id*. at 9-10.  On the issue of whether the May 2018 report described a defect, Ms. Perez argues that, although the customer "did not specifically identify the exact cause of the cooker's explosion, [the customer's] description of the incident and subsequent injuries were sufficient to place Target on notice that something was seriously wrong with cookers they were selling."  *Id*. at 9.[10]

In its reply, Target argues that "the fact that an individual was injured in relation to use of a product 'does not establish that the product was defective or unreasonably dangerous.'"  Docket No. 56 at 8 (quoting Colo. Jury Instr., Civil § 14:7 and citing *Kysor Indus. Corp. v. Frazier*, 642 P.2d 908, 911 (Colo. 1982); *Shultz v. Linden-Alimak, Inc*., 734 P.2d 146, 148-49 (Colo. App. 1986); *Kern v. Gen. Motors Corp*., 724 P.2d 1365, 1366 (Colo. App. 1986); *Davis v. Caterpillar Tractor Co*., 719 P.2d 324, 327 (Colo. App. 1985)).  Target contends that plaintiff's argument would negate the innocent seller

---

[10] Additionally, Ms. Perez argues that summary judgment is inappropriate because a Colorado state district court held that "innocent seller status is itself a fact question" that must be submitted to the jury.  Docket No. 54 at 11 (citing *Ingram v. Blue Algorithm*, 2018 WL 3732412, at *2 (Colo. Dist. Ct. Jan. 14, 2018)).  However, the district court in *Ingram* stated that "the determination whether Defendant is an innocent seller within the meaning of section 402(1) is a factual matter and cannot be determined as a matter of law by way of a motion to dismiss."  *Ingram*, 2018 WL 3732412, at *2.  Several courts in this District have granted summary judgment motions on the innocent seller provision, determining that a seller was not a manufacturer under Colo. Rev. Stat. § 13-21-401.  *See, e.g., Bullock*, 2010 WL 1380724, at *1; *Mandy's Ltd v. Salon & Beauty Source, Inc*., No. 15-cv-01571-WYD-MJW, 2016 WL 7868829, at *3-5 (D. Colo. June 3, 2016).  Accordingly, the Court rejects this argument.

defense by making "any seller with knowledge of an injury involving a product into a manufacturer of that product."  *Id.*[11]

The Court finds that Ms. Perez has failed to raise a genuine dispute of material fact as to whether Target had actual knowledge of a "defect" in the Multi-Cooker.  *See* Colo. Rev. Stat. § 13-21-401(1).  It is undisputed that Target received the May 2018 report before Ms. Perez bought the Multi-Cooker on November 23, 2018.  *See* Docket No. 49 at 2, ¶ 1.  It is undisputed that no other entity or person communicated any defect in the Multi-Cooker model to Target at any time before Ms. Perez purchased the Multi-Cooker and the subject incident.  *Id*. at 3-4, ¶ 15.  The May 2018 report states

> Guest was cooking vegetable soup when he used the pressure release valve and let pressure release for 10 minutes.  He then turned the handle and the crockpot exploded, throwing vegetable soup everywhere and causing burns to the guest[']s arm.  Medical attention was sought on day of incident, and a second time during the healing process as they had concerns regarding the burns.  Guest has been out of work since the incident on doctors['] orders and is set to return 05/29/18.  Crockpot was severely damaged.

Docket No. 49-3 at 1; *see also* Docket No. 54-3 at 2.  The May 2018 report does not identify any defect in the Multi-Cooker.  Although the report indicates that the customer was seriously injured and the Multi-Cooker was "severely damaged," the report does not disclose the nature of any technical, mechanical, or design flaw in the Multi-Cooker.  *See* Docket No. 49-3 at 1.[12]  The fact that a person is "injured" or that property is

---

[11] Target asserts new facts in the reply regarding Target's sales figures for the Multi-Cooker.  *See* Docket No. 56 at 7 n.2, 9 n.3.  Target did not include these facts in the Statement of Undisputed Material Facts section of its summary judgment motion.  Accordingly, the Court will not consider these facts undisputed because Target did not properly raise the facts in accordance with the Court's Practice Standards.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i-ii.

[12] Ms. Perez concedes that the May 2018 report "did not specifically identify the exact cause of the cooker's explosion."  Docket No. 54 at 9.

9

"damaged," "without more, does not establish that the product was defective." *See* Colo. Jury Instr., Civil § 14:7; *see also Kysor Indus. Corp.*, 642 P.2d at 911 ("the fact that, under certain circumstances, an accident may occur in connection with the use of a product does not necessarily make the product defective."). The Court finds that no reasonable jury could find that the May 2018 report provided "actual knowledge of a defect" in the Multi-Cooker because the May 2018 report did not disclose a defect. *See Mix v. Target Corp.*, 759 F. Supp. 2d 876, 881 (W.D. Tex. 2010) (holding that two customers' complaints, describing their children's injuries from an infant seat, were insufficient to establish "actual knowledge" of a "defect" under Texas' innocent seller statute because neither complaint "mentioned the 'defect' that allegedly resulted in [plaintiff's] injuries, that is, a lack of a seatbelt").

Accordingly, it is undisputed that Target did not have "actual knowledge of a defect" in the Multi-Cooker and therefore Target does not qualify as a "manufacturer" pursuant to Colo. Rev. Stat. § 13-21-401(1). Under Colorado's innocent seller statute, "[n]o product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." Colo. Rev. Stat. § 13-21-402(1).[13] Consequently, Target is an "innocent seller" under Colo. Rev. Stat. § 13-21-

---

[13] Ms. Perez does not argue that any of her claims against Target fall outside of the definition of a product liability action. Under the statute, a "product liability action" is defined as "any action brought against a manufacturer or seller of a product, *regardless of the substantive legal theory or theories upon which the action is brought*, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product." Colo. Rev. Stat. § 13-21-401(2)

402(1) and is entitled to summary judgment on plaintiff's claims. See Bullock, 2010 WL 1380724, at *4.

IV.     CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Target Corporation's Motion for Summary Judgment [Docket No. 49] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice** against Target. It is further

**ORDERED** that Target is terminated from this case.

DATED September 29, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

(emphasis added). In addition to strict products liability claims, courts have found that the following claims also fall within the innocent seller provision: negligence; violation of the Colorado Consumer Protection Act; misrepresentation; breach of express warranty; breach of implied warranty; and civil conspiracy. See Bullock, 2010 WL 1380724, at *2; Mandy's Ltd, 2016 WL 7868829, at *1, 5-6.

11