IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01915-PAB-KAS

GEORGINA PEREZ,

     Plaintiff,

v.

SUNBEAM PRODUCTS, INC. d/b/a Jarden Solutions, and
NEWELL BRANDS, INC.,

     Defendants.

_____

**ORDER**
_____

This matter is before the Court on Defendants Sunbeam Products, Inc. and

Newell Brands Inc.'s Motion to Exclude Plaintiff's Expert Soheil Eshrag[h]i [Docket No.

99].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.    **BACKGROUND**

On November 23, 2018, plaintiff Georgina Perez purchased a multicooker made

by defendants Sunbeam Products, Inc. ("Sunbeam") and Newell Brands, Inc.

("Newell").[1]  Docket No. 84 at 2.  The multicooker had a function that allowed it to be

used as a pressure cooker.  Docket No. 99 at 4, ¶ 2.  On June 3, 2019, Ms. Perez used

the multicooker's pressure cooking function to prepare beans.  *Id.* at 2, ¶ 3.  At her

deposition, Ms. Perez testified that, when she touched the multicooker after the end of

_____

[1] On September 29, 2023, the Court denied in part Newell's motion for summary
judgment, finding that Ms. Perez has created a genuine issue of material fact as to
whether Newell is a "manufacturer" of Ms. Perez's multicooker under Colo. Rev. Stat.
§ 13-21-401(1).  Docket No. 84 at 8.

the multicooker's bean cycle, it exploded, causing her serious injury.  Docket No. 99-1 at 10, 40:8–25.  In her amended complaint, Ms. Perez asserts eight claims against defendants, involving design defect, manufacturing defect, failure to warn, negligence, breach of implied warranty, breach of express warranty, and fraud, as well as a claim brought under the Colorado Consumer Protection Act.  Docket No. 78 at 8–10, ¶¶ 55–63 (design defect), 10–12, ¶¶ 64–72 (manufacturing defect), 13–15, ¶¶ 73–81 (failure to warn), 15–18, ¶¶ 82–87 (negligence), 18–19, ¶¶ 88–114 (breach of implied warranty), 19–21, ¶¶ 96–107 (breach of implied warranty), 21–23, ¶¶ 108–114 (Colorado Consumer Protection Act claim), 23–25, ¶¶ 115–22 (fraud).

Ms. Perez has designated Dr. Soheil Eshraghi, a mechanical engineer, as an expert regarding product defects.  Docket No. 99 at 1.  On July 25, 2022, Dr. Eshraghi prepared an expert report regarding whether the multicooker Ms. Perez used had defects that could have caused the explosion.  Docket No. 99-5 at 3.  Defendants identify five opinions of Dr. Eshraghi: (1) "[t]he Multi-Cooker's lid can be mistakenly attached to the base in orientations other than the correct lockable orientation.  These 'out-of-position' attachments are unstable because the lid and base locking lugs have insufficient overlap and can slip out of engagement unexpectedly"; (2) "[t]he Multi-Cooker can start pressurizing even when the lid is not in the properly locked position"; (3) "[u]nder these circumstances the lid can explosively separate from the base on its own or by simple touch or movement"; (4) "Sunbeam's recall of the Multi-Cooker should have been issued sooner"; and (5) "[t]he recall was not successful in eliminating the defects in the Multi-Cooker."  Docket No. 99 at 6, ¶ 20 (citing Docket No. 99-5 at 11–

12).  Defendants appear to seek to exclude each of these opinions on various grounds.

*Id.* at 11–15.[2]

## II.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91

(1993).  If challenged by a party opposing the testimony of an expert witness, "[Rule]

702 imposes upon the trial judge an important 'gate-keeping' function with regard to the

admissibility of expert opinions."  *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297,

1307 (10th Cir. 2015) (citation omitted).  However, "[t]he proponent of expert testimony

bears the burden of showing that its proffered expert's testimony is admissible."  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  "[T]he proponent has the

burden of establishing that the pertinent admissibility requirements are met by a

---

[2] Defendants' motion is titled "Defendants Sunbeam Products, Inc. and Newell Brands Inc.'s Motion to Exclude Plaintiff's Expert Soheil Eshrag[h]i."  *Id.* at 1.  However, Rule 702 is not directed to individuals; it is directed to opinions.  *See* Fed. R. Evid. 702. The Court's practice standards require that any motion to exclude expert testimony to identify "with specificity each opinion the moving party seeks to exclude" and to identify "the specific ground(s) on which each opinion is challenged."  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.G (emphasis omitted).  While defendants' motion identifies five opinions of Dr. Eshraghi in its statement of facts, Docket No. 99 at 6, ¶ 20, defendants' argument section does not discuss each opinion individually and instead intersperses challenges to different opinions on different grounds.  *Id.* at 11–15. Thus, the Court will only consider challenges to these five opinions that are reasonably specific.

preponderance of the evidence."  *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

To determine whether an expert opinion is admissible, the court must perform "a two-step analysis."  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion.  *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability.  *Id.* at 1180–81; Fed. R. Evid. 702(b)–(d) (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93).  In assessing whether a methodology is reliable, a court may consider several non-dispositive factors, including "(1) whether the theory can be tested; (2) whether it is subject to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards; and (5) the general acceptance in the relevant scientific community."  *United States v. Foust*, 989 F.3d 842, 845 (10th Cir. 2021) (citing *Daubert*, 508 U.S. at 593-94).  However, courts have "broad discretion to consider a variety of other factors."  *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016).  Next, the court

must assess whether the expert used sufficient facts and data as required by the methodology and whether the expert reliably applied the methodology to the facts of the case. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008)*; see also Roe*, 42 F.4th at 1181. To demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). Establishing reliability does not require showing that the expert's testimony is indisputably correct. *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Roe*, 42 F.4th at 1181. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case

that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted).  In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id*. at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

## III.   ANALYSIS

### A.   <u>Dr. Eshraghi's Qualifications</u>

Defendants challenge Dr. Eshraghi's qualifications to provide the expert opinions in his report.  Docket No. 99 at 13.  They point out that Dr. Eshraghi does not consider himself to be an expert in the design of multicookers.  *Id*. at 4, ¶ 14.  They assert that most of Dr. Eshraghi's work experience is in the aerospace industry and he has "never worked for a consumer product manufacturer nor evaluated any other kitchen appliances in a design/consulting expert role." *Id*., ¶ 15.  Defendants also argue that Dr. Eshraghi has no experience with the recall of a consumer product and has never prepared warnings for instruction manuals for any consumer product.  *Id*. at 4–5, ¶¶ 15–16.

Ms. Perez responds that Dr. Eshraghi is an expert with a doctorate in materials science and engineering from the University of California, Irvine and has over forty years of experience designing and testing products.  Docket No. 101 at 3–4.  Dr. Eshraghi has designed and tested pressure transducers, fasteners, electro-mechanical latching, and multi-component assembly fasteners.  *Id*.  Ms. Perez states that, "[a]s a New Product & Technical Development Manager for RBC (Sonic), Dr. Eshraghi gained

experience in product design and development, process improvement, root cause investigation, and training new engineers." *Id.* at 4.

The Tenth Circuit has held that "as long as an expert stays within the reasonable confines of his subject area, . . . a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996) (alterations and quotations omitted)). Accordingly, the question is whether the issues that Dr. Eshraghi discusses in his report are "within the reasonable confines" of his expertise. *See id.*

The Court is satisfied that Dr. Eshraghi is qualified to provide expert opinions on the design defect he identifies in his report. Dr. Eshraghi's doctorate in materials science, his decades of work as a mechanical engineer and as a new product development manager, and his experience testing pressure transducers, fasteners, electro-mechanical latching, and multi-component assembly fasteners qualify him to opine on the alleged defects in Ms. Perez's multicooker. That Dr. Eshraghi is not an expert in multicooker design specifically or that he has no experience with consumer appliances does not render his opinions outside the confines of his expertise as a mechanical engineer. *Ralston*, 275 F.3d at 970.

Defendants argue that Dr. Eshraghi is not qualified to opine that "Sunbeam's recall of the Multi-Cooker should have been issued sooner" and that "[t]he recall was not successful in eliminating the defects in the Multi-Cooker." Docket No. 99 at 6, ¶ 20. Defendants contend that Dr. Eshraghi's "opinions regarding the recall of the Multi-

Cooker are inadmissible as he admittedly has no experience in the recall of a consumer product." *Id.* at 14.  This is the full extent of defendants' argument.

In his report, Dr. Eshraghi opines that the "recall notice should have been issued sooner."  Docket No. 99-5 at 12.  He also states that "the recall notice did not inform the consumers of the potential injuries that the pressure cooker could inflict on them" and that the notice "mentions that the lid can detach during use without any warning about the possible severity of the explosion of the lid." *Id.*  Dr. Eshraghi's report and his curriculum vitae do not address any relevant experience he has with product warnings or recall notices. *See id.* at 3, 15–18.    In his deposition,[3] Dr. Eshraghi testified that he had prepared a warning label for fasteners containing cadmium that warned people fabricating the fasteners about cadmium vapor.  Docket No. 99-6 at 11:14–12:1. However, he provided no information that suggested his experience preparing such warnings gave him relevant expertise regarding matters of timing or severity of harm. As such, Ms. Perez has failed to demonstrate that Dr. Eshraghi is qualified to opine on the timing and nature of the recall notice, and the Court will exclude his opinions

---

[3] Both parties repeatedly cite to Dr. Eshraghi's deposition testimony.  For example, Ms. Perez argues that Dr. Eshraghi is qualified to provide all of the opinions in his report because he testified that he has prepared and reviewed warnings and instructions for products.  Docket No. 101 at 4; Docket No. 101-4 at 4–5: 11:18–12:10.  A party may not supplement a retained expert's report through deposition testimony. *Jackson v. Teamsters Loc. Union 922*, 312 F.R.D. 235, 236 (D.D.C. 2015) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.") (citation omitted).  Ms. Perez did not refer to a supplemental expert report pursuant to Federal Rule of Civil Procedure 26(e)(2) and any such supplement would be untimely unless disclosed by the deadline in Rule 26(e)(2). *See* Fed. R. Civ. P. 26(e)(2) ("Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").  However, because both parties cite to Dr. Eshraghi's deposition testimony, the Court will consider his testimony for purposes of ruling on this motion.

regarding the recall notice.  *See Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) ("while Dr. Firestone was undoubtedly qualified to testify about a manufacturing defect in an exploding ceramic grinding wheel, that did not qualify him as an expert on grinding wheel warnings"); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (holding that district court did not abuse its discretion in excluding doctors' testimony regarding the adequacy of warnings because her status as a board-certified orthopedic surgeon did not qualify her to "render an expert opinion concerning the adequacy of the warnings with respect to the MultiHole Nail."); *Alnahhas v. Robert Bosch Tool Corp.*, 2018 WL 2293965, at *4 (W.D. Okla. May 18, 2018) ("Although Dr. Anderson testified that he had taken classes on developing warnings and read a 'number of books' on the subject matter, the fact he may have some marginal familiarity with developing product warnings is a far cry from classifying him as an 'expert' on the issue."); *Pearson v. Young*, 2002 WL 32026157, at *4 (W.D. Okla. Jan. 17, 2002) (excluding testimony by mechanical engineer because his experience "overseeing product design and quality control of heavy industrial mobile equipment" and "continuing education in human factors concepts" did not qualify him to testify about the party's proposed warning).  Even if the Court were to find Dr. Eshraghi qualified to offer opinions on the product warnings here, he provides no basis for his conclusions, and the Court would exclude his opinions for this reason.  Fed. R. Evid. 702 (expert opinions must be based on sufficient facts or data); *Roe*, 42 F.4th at 1181 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (citation omitted).

**B.  Ms. Perez's Failure to Admit**

Defendants' arguments that Dr. Eshraghi's opinions should be excluded are based, in part, on Ms. Perez's failure to respond to certain requests for admission defendants sent to Ms. Perez pursuant to Federal Rule of Civil Procedure 36.  Docket No. 99 at 13.  Rule 36 provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  The rule states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

In the request for admission, [4]  defendants asked Ms. Perez to admit that:

- She "read and understood the directions on use contained in the Owner's Manual prior to using the [Multi-Cooker]."
- She "always used, maintained, cleaned and operated" the Multi-Cooker "in accordance with the Owner's Manual."
- "Prior to using the [Multi-Cooker] on June 3, 2019, Plaintiff assembled the [Multi- Cooker] by placing the Cooking Pot into the Heating Base."
- "Plaintiff then placed the Lid upon the Multi-Cooker (Express Pot), and the ▼ symbol was aligned with the unlocked symbol."
- "To lock, Plaintiff twisted counterclockwise, aligning the ▼ symbol with the locked symbol (as described and depicted in the How To Us Your Express Crock Multi-Cooker section of the Owner's Manual, at pg. 9, Figure 2)."

---

[4] Defendants served Ms. Perez with these requests for admission on March 25, 2022.  Docket No. 99 at 2, ¶ 4.  Ms. Perez was obligated to respond to defendants requests for admission by April 24, 2022.  *See* Fed. R. Civ. P. 36(a)(3).  Ms. Perez never responded to defendants' requests for admission. Docket No. 99 at 3, ¶ 5.  In her response, Ms. Perez does not deny that she received defendants' requests for admission and offers no explanation for failing to respond.  Docket No. 101 at 8.

- "The [Multi-Cooker operated in this configuration until the alleged incident occurred."
- "Plaintiff properly placed the lid on the [Multi-Cooker] (as described and depicted in the How To Use Your Express Crock Multi-Cooker, Assembly section of the Owner's Manual at pg. 9)."

Docket No. 99 at 2–3, ¶ 4 (quoting Docket No. 99-7 at 1–3).  Defendants contend that, because Ms. Perez never responded to these requests for admissions, these facts are established for the purposes of ruling on this motion.  *Id.* at 3, 13.  Defendants further argue that Dr. Eshraghi's opinions should be excluded because he did not test the multicooker under the specific conditions described in the request for admission.  *Id.* at 11–12.  In particular, defendants rely on the following requests for admission that Ms. Perez failed to respond to:

- "Plaintiff then placed the Lid upon the Multi-Cooker (Express Pot), and the ▼ symbol was aligned with the unlocked symbol."
- "To lock, Plaintiff twisted counterclockwise, aligning the ▼ symbol with the locked symbol (as described and depicted in the How To Us Your Express Crock Multi-Cooker section of the Owner's Manual, at pg. 9, Figure 2)."
- "The [Multi-Cooker] operated in this configuration until the alleged incident occurred."
- "Plaintiff properly placed the lid on the [Multi-Cooker] (as described and depicted in the How To Use Your Express Crock Multi-Cooker, Assembly section of the Owner's Manual at pg. 9)."

A party seeking to secure an admission under Rule 36 must be able to rely on the rule's binding effect.  *Gonzalez de Gomez v. Adams Cnty.*, 2023 WL 5163988, at *4–*5 (10th Cir. Aug. 11, 2023) (citing Fed. R. Civ. P. 36, advisory committee's note to 1970 amendment).  Otherwise, "he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission."  *Id.*  Rule 36(a)(3) and Rule 36(b) work in tandem to ensure that parties will respond to requests for admission by prescribing that a failure to respond by a given time equates to an admission and by placing the burden on the nonresponsive party to show the prejudice it faces through

the normal operation of the rule.  *See* Fed. R. Civ. P. 36(a)(3); Fed. R. Civ. P. 36(b).

However, Rule 36(b) provides that "the court may permit withdrawal or amendment if it

would promote the presentation of the merits of the action."[5]  *Id.*

Rule 36 permits a court to allow a party to withdraw its admissions only "on

motion."  Fed. R. Civ. P. 36(b).  The Tenth Circuit has adopted a broad interpretation of

what a request to withdraw an admission "on motion" requires and has rejected "overly

technical" arguments to the contrary.  *See Masterson v. Nationstar Mortg., LLC*, 820 F.

App'x 707, 711 (10th Cir. 2020) (unpublished) (quoting *Bergemann v. United States*,

820 F.2d 1117, 1120–21 (10th Cir. 1987)); *see also Kerry Steel, Inc. v. Paragon Indus.*,

Inc., 106 F.3d 147, 153–54 (6th Cir. 1997) ("although the defendant did not file a formal

motion to withdraw, the defendant's attorney did argue at the hearing on the motion to

dismiss that the plaintiff's requests for admission should not be deemed admitted").

Courts in this district have allowed parties to withdraw Rule 36 admissions through their

responses to motions for summary judgment.  *See*, *e.g.*, *Nguyen v. Est. of Bingel*, No.

21-cv-01095-NYW-NRN, 2022 WL 4120623, at *3–5 (D. Colo. Sept. 9, 2022) ( a court

"may permit such withdrawal or amendment 'when [1] the presentation of the merits of

the action will be subserved thereby and [2] the party who obtained the admission fails

to satisfy the court that withdrawal or amendment will prejudice that party in maintaining

the action or defense on the merits.'" (quoting *Raiser v. Utah Cnty.*, 409 F.3d 1243,

---

[5] This provision is "[s]ubject to Rule 16(e)," Fed. R. Civ. P. 36(b), which provides that a court can modify the final pretrial order "after a final pretrial conference only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  Magistrate Judge Kristen Mix vacated the final pretrial conference in this case after approving the final pretrial order. Docket No. 60.  For the reasons discussed herein, the Court finds that manifest injustice will occur if the Court does not permit Ms. Perez the opportunity to withdraw certain admissions.

1246 (10th Cir. 2005)); *Pittman v. Wakefield & Assocs., Inc.*, No. 16-cv-02695-RBJ-KMT, 2017 WL 5593287, at *3 (D. Colo. Nov. 21, 2017) ("[A]lthough Ms. Pittman has not moved to withdraw her admissions, she does argue in her response to Wakefield's motion for summary judgment that she should not be held to her admissions. . . .  I find that her response may be properly considered as a motion to withdraw her admissions, and I find that withdrawal is appropriate in this case.").

While courts adopt a broad view of what constitutes a motion to withdraw, Rule 36 does not permit the court to grant such motions without at least some action by the party.  *Broad. Music, Inc. v. Hub at Cobb's Mill, LLC*, 2015 WL 1525936, at *5 (D. Conn. Apr. 2, 2015) ("In the interest of justice, the Court has diligently searched for precedent, but it has not found any supporting a *sua sponte* withdrawal of a represented party's response to a request for admission where the party has not, at any point, responded to the request, moved for an extension of time, affirmatively sought to withdraw the deemed admission, or otherwise acknowledged the existence of the request."); *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209 (E.D. Mich. 2018) ("The Court cannot *sua sponte* withdraw the admissions for defendants." (citing *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991))); *Jacobs v. Elec. Data Sys. Corp.*, 2006 WL 3742202, at *2 (M.D. Ala. Dec. 18, 2006) ("As Rule 36(b) expressly provides for withdrawal only 'on motion,' the court will not *sua sponte* withdraw Jacobs's admissions or set aside the order of the magistrate judge.").

Ms. Perez did not respond to defendants' requests for admission and thereby is deemed to have admitted the facts in the request.  She has not filed a motion to withdraw these admissions.  The entirety of Ms. Perez's response to defendants' use of

her admissions in their Rule 702 motion is that "[c]ounsel for Plaintiff was previously unaware of any issues with respect to the answering of requests for admission" and that, "[e]ven if the requests were deemed admitted pursuant to Fed.R.Civ.P. 36, manifest [in]justice would result if expert opinions were deemed 'unreliable' in a scientific sense due to the operation of a procedural mechanism."  Docket No. 101 at 8–9.  Nothing in this response suggests that Ms. Perez has asked the Court to withdraw her admissions.

Nevertheless, the facts of this case require that the Court consider whether manifest injustice would occur if the requests for admission regarding how Ms. Perez attached the lid of the multicooker are deemed "conclusively established."  Fed. R. Civ. P. 36(b).  First and foremost, neither Ms. Perez nor defendants actually believe that Ms. Perez correctly attached the lid of the multicooker, which is the essence of the four requests for admission noted earlier.  At her deposition, Ms. Perez claims not to remember how she attached the lid.  *See*, *e.g.*, Docket No. 99-1 at 7, 27:23–25. Although he did not test Ms. Perez's multicooker with the lid properly closed, Dr. Eshraghi conceded that it would not explode by touching if the lid was attached as explained in the instructions.  Docket No. 99-6 at 79:2–3.  Defendants have no good faith belief that Ms. Perez properly attached the lid either.[6]  If she had done so, the lid

---

[6] Defendants' expert opined in his report that, had Ms. Perez attached the lid of the multicooker exactly as provided for in the instructions manual – *i.e.*, had she "placed the Lid upon the Multi-Cooker (Express Pot), and the ▼ symbol was aligned with the unlocked symbol," "twisted [the lid] counterclockwise, aligning the ▼ symbol with the locked symbol," and "properly placed the lid on the [Multi-Cooker] (as described and depicted in the How To Use Your Express Crock Multi-Cooker, Assembly section of the Owner's Manual at pg. 9)", Docket No. 99 at 2–3, ¶ 4 – the incident on June 3, 2019 could not have happened.  *See* Docket No. 96-7 at 6 ("When the instructions contained

would not have blown off the multicooker and Ms. Perez would not have been injured. But, in fact, Ms. Perez was injured, and defendants make no suggestion that her injuries were not caused by the multicooker. Giving conclusive effect to the four requests for admission regarding how Ms. Perez attached the lid would be devoid of factual support and would cause manifest injustice. Furthermore, the Court perceives no prejudice to defendants by not enforcing these four requests for admission against Ms. Perez. The purpose of Rule 36 is to narrow the issues for trial and to permit a party to avoid the expense of preparing to prove the matters it has requested be admitted. *Gonzalez de Gomez*, 2023 WL 5163988, at *5. Here, however, defendants have avoided no expense. Rather than relying on Ms. Perez's admissions, defendants deposed Ms. Perez and questioned her as to how she attached the lid to the multicooker on the day of the incident. Docket No. 99 at 3–4, ¶¶ 6–9. In her deposition, she stated that she did not remember how she secured the lid, could not demonstrate how she put the lid on the multicooker, and did not know if she attempted to open or twist the lid of the multicooker before the lid came off. *Id.*, ¶¶ 6–7, 9. Defendants would not be prejudiced by Ms. Perez withdrawing her admissions. Therefore, the Court will allow Ms. Perez the opportunity to withdraw her admissions regarding how she put the lid on the multicooker on or before June 14, 2024.

However, other admissions that Ms. Perez failed to respond to do not involve the issue of how Ms. Perez attached the lid. Docket No. 99 at 2–3, ¶ 4 (quoting Docket No. 99-7 at 1–3). The Court perceives no reason why these admissions should not be

_____

in the Owner's Manual, on the lid label, on the lid markings and in the Recipe Book are followed, an incident as described by Georgina Perez cannot occur.").

deemed admitted.  As such, the Court finds that the following facts have been conclusively established:

- Ms. Perez read and understood the directions on use contained in the Owner's Manual prior to using the multicooker.
- Ms. Perez always maintained and cleaned the multicooker in accordance with the Owner's Manual.
- Prior to using the multicooker on June 3, 2019, Ms. Perez assembled the multicooker by placing the Cooking Pot into the heating base.

**C.** **Reliability and Admissibility of Dr. Eshraghi's Opinions**

### 1. *The multicooker's lid can be attached in unstable configurations.*

Defendants challenge Dr. Eshraghi's opinion that "[t]he Multi-Cooker's lid can be mistakenly attached to the base in orientations other than the correct lockable orientation.  These 'out-of-position' attachments are unstable because the lid and base locking lugs have insufficient overlap and can slip out of engagement unexpectedly."  *Id.* at 6, ¶ 20.  Defendants argue that Dr. Eshraghi's opinion is not relevant because, "under *Daubert*, the relevancy factor is required in determining the admissibility of an expert's testimony and that the expert's testimony must 'fit' the facts of the case."  *Id.* at 13. Defendants state that "there is no evidence in this case that the Plaintiff's testimony at trial will conform to Dr. Eshrag[h]i's opinion that the lid was misaligned."  *Id.*  They claim

that Ms. Perez's amended complaint, [7] her interrogatory responses,[8] and the facts admitted through defendants' request for admission all demonstrate that Ms. Perez "installed the lid pursuant to instructions."  *Id.*  Defendants argue that "in order to reach [Dr. Eshraghi's] opinions, he must ignore Plaintiff's admissions that she installed the lid in accordance with the instructions and warnings."[9]  *Id.*  However, as defendants point out, Dr. Eshraghi did not test to see whether the lid could be removed in the properly locked position.  *Id.* at 12.  As such, defendants assert that Dr. Eshraghi's opinions should be excluded because his "opinions fail to fit the facts of this case in that he did not attempt to recreate the actual event."  *Id.* at 13.

---

[7] Defendants also appear to argue that Ms. Perez's amended complaint binds her to her allegations therein.  Docket No. 99 at 13.  Defendants cite no authority for this proposition.  As a general rule, "[a]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended."  *Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (unpublished) (quoting *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)).  However, such admissions must be "formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute."  *Falcon v. Saint-Veltri*, 23 F. App'x 908, 911 n.3 (10th Cir. 2001) (unpublished) (citation omitted).  The allegations in Ms. Perez's complaint were not made for the purpose of dispensing with proof of facts which are not in dispute and are not binding on her.  *Id.*

[8] Defendants' assertion that Ms. Perez's interrogatory responses indicate that Ms. Perez properly affixed the lid is incorrect.  Ms. Perez's interrogatory response states that she "followed directions that were included with the pressure cooker for making beans.  She placed water in unit, then added the beans per the recipe instructions.  Plaintiff set the unit to cook beans.  The unit beeped indicating the beans were done. . . .  As Plaintiff touched the unit, the lid exploded off the cooker."  Docket No. 99-3 at 12, ¶ 2.  Her response does not state that she properly attached the lid of the multicooker.  Furthermore, the Court finds that Ms. Perez's interrogatory responses do not constitute judicial admissions and are not binding on her.  *See Hurtado v. Balerno Int'l Ltd.*, 408 F. Supp. 3d 1315, 1329 (S.D. Fla. 2019) ("Courts have held that deposition testimony and interrogatory answers do not rise to the level of judicial admissions and thus can be retracted by trial testimony.").

[9] For the reasons discussed above, the Court will not exclude Dr. Eshraghi's opinions because he failed to consider a circumstance that is wholly without factual support, i.e., that Ms. Perez properly attached the lid.

As the Court has explained, despite defendants assertion to the contrary, there is no support for the proposition that Ms. Perez properly aligned the lid of the multicooker, and experts from both parties agree that, had she done so, the accident would not have occurred.  Defendants' contentions that "there is no evidence in this case that the Plaintiff's testimony at trial will conform to Dr. Eshrag[h]i's opinion that the lid was misaligned" and that Dr. Eshraghi's testing failed to fit the facts of the case are incorrect. *Id*.  The fact that Dr. Eshraghi did not test the multicooker with the lid properly locked is not material, and his testing for different ways the lid could be improperly attached is relevant and material.  Accordingly, the Court will not exclude Dr. Eshraghi's opinion that the multicooker's lid can be mistakenly attached to the base in orientations other than the correct lockable orientation.

### 2. The multicooker can start pressurizing even when the lid is not in the properly locked position

Defendants challenge Dr. Eshraghi's opinion that "[t]he Multi-Cooker can start pressurizing even when the lid is not in the properly locked position."  *Id*. at 6, ¶ 20. They assert that "Dr. Eshrag[h]i failed to consider the operative facts of Plaintiff's case," which includes both the fact that the multicooker was pressurized when Ms. Perez touched the unit and that Ms. Perez "followed the directions that were included with the Multi-Cooker for making beans."  *Id*. at 11–12.  The instructions for making beans included "plac[ing] water in the unit, then add[ing] the beans per the recipe instructions" and "set[ting] the unit to cook beans."  *Id*. at 2, ¶ 3.  Defendants claim that "Dr. Eshrag[h]i, without attempting to remove the lid while under pressure, concluded in this report that the Multi-Cooker's lid can be mistakenly attached to the base in orientations other than the correct lockable orientation and the Multi-Cooker can start pressurizing

even when the lid is not in the properly locked position." *Id.* at 12.  Defendants characterize "[t]he entirety of Dr. Eshrag[h]i's 'testing'" as "identifying misaligned lid positions that allowed the Multi-Cooker to turn on." *Id.* at 13.  They assert that "[d]espite acknowledging that testing could be done, Dr. Eshrag[h]i, did not attempt to recreate the facts of this case and remove the lid of the Multi-Cooker while under pressure." *Id.* at 14.

Defendants appear to argue that Dr. Eshraghi's opinion is based on inadequate testing of the multicooker and that, therefore, his opinion is based on insufficient facts and data as required by Rule 702.  *See id.* at 15 (Dr. Eshraghi's "testimony should be inadmissible in the absence of any data supporting his opinions as they do not fit the facts of this case.").  Defendants appear to claim that, because Dr. Eshraghi did not attempt to remove the lid while the unit was pressurized, his testing did not show that the unit could pressurize in a misaligned configuration, only that the unit could turn on.  As such, they contend that his opinion that the "Multi-Cooker can start pressurizing even when the lid is not in the properly locked position" is unsupported by his testing. *Id.* at 12.  Ms. Perez responds that Dr. Eshraghi's opinion is based, in part, on his review of defendants' recall notice, which states, "[t]he recalled Crock-Pot multi-cooker can pressurize when the lid is not fully locked.  This can cause the lid to suddenly detach while the product is in use, posing burn risks to consumers from hot food and liquids ejected from the product."  Docket No. 101 at 8.

In his report, Dr. Eshraghi states that he "examined Mrs. Perez's Pressure Cooker."  Docket No. 99-5 at 9.  He found that "[t]he lid of the subject cooker can be attached to the base in multiple positions (Figure 2), in which the cooker can seal and

pressurize but with insecure lug engagement." *Id.* In his report, Dr. Eshraghi includes four images of the multicooker in which the lid is attached to the multicooker in different configurations. *Id.* at 10. The display and the button labeled "soup" are lit in each image, indicating that the multicooker is on and that the soup function is active. *Id.* The start button and the high-pressure setting are also lit in three of the four images. *Id.* However, other than the fact that certain display lights appear to be active, Dr. Eshraghi's report provides no basis for concluding that the unit can pressurize. His report indicates only that the unit can turn on with an incorrect lid configuration and the photographs of his report indicate that the "soup" function can activate. Dr. Eshraghi provides no explanation for what the soup function of the multicooker does, whether such a function involves pressure cooking, and why Dr. Eshraghi believes that starting the soup function means that the multi-cooker "can start pressurizing." At his deposition, Dr. Eshraghi stated that he did not attempt to pressurize the multicooker while testing the misaligned lid configurations. Docket No. 99-6 at 73:4–8. Finally, as defendants point out, Dr. Eshraghi did not attempt to remove the lid while the unit was pressurized, which would have shown not only whether the lid could be removed but also would have shown that the unit was pressurized.

It may be that Dr. Eshraghi's assumption that the multicooker can and will pressurize if the soup function is active, regardless of whether the lid is improperly attached, is correct. But Rule 702 requires that an expert's opinions be based on "sufficient facts or data," and Rule 26 of the Federal Rules of Civil Procedure requires that a retained expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Evid. 702(b); Fed. R. Civ. P.

26(a)(2)(B)(i).  Dr. Eshraghi's report contains no explanation for the opinion he expressed in his deposition that the multicooker will pressurize if the lid is attached and the bobber is taped to the top.  His opinion regarding the ability of the multicooker to pressurize is *ipse dixit* and will be excluded.  *Roe*, 42 F.4th at 1181.

However, Dr. Eshraghi will be allowed to testify that he tested Ms. Perez's multicooker and observed that the unit could begin its soup function, even when the lid was misaligned.  Defendants do not challenge that opinion.  As such, Dr. Eshraghi will be permitted to testify about the methodology and results of his testing, i.e., that he was able to misalign the lid and start the soup function of the multicooker.  However, because Dr. Eshraghi provided no explanation in his report or his deposition about other conclusions that can be drawn from the results of his testing, Dr. Eshraghi will not be permitted to testify that the results of his testing showed that Ms. Perez's unit can, in fact, pressurize when the lid is misaligned.

For the same reasons, Dr. Eshraghi's opinion that the misaligned lid configurations "are unstable because the lid and base locking lugs have insufficient overlap and can slip out of engagement unexpectedly," will be excluded in part.  Docket No. 99 at 6, ¶ 20.  Dr. Eshraghi's report provides no support or explanation for his opinion that the misaligned lid configurations "are unstable."  *Id.*  Dr. Eshraghi, however, will be permitted to opine on his observations regarding how the lid of the multicooker attaches to the base, including how the misaligned lids were attached to the multicooker.  However, such discussion of the lid may not include how the lid would function under pressure.  As such, Dr. Eshraghi will not be permitted to opine that

misaligned lid configurations are "unstable" or that they "can slip out of engagement unexpectedly."

### 3. When the lid is misaligned and the multicooker is pressurized, the lid can explosively separate from the base on its own or by simple touch or movement

Defendants challenge Dr. Eshraghi's opinion that "the lid can explosively separate from the base on its own or by simple touch or movement" when the lid is misaligned and the unit is pressurized.  Docket No. 99 at 6, ¶ 20.  Defendants maintain that Dr. Eshraghi's opinion is based on two premises, "(1) the subject Multi-Cooker must have retained internal pressure; or (2) the lid was misaligned."  *Id.* at 13.  Defendants argue that Dr. Eshraghi "performed no testing to conclude that the subject Multi-Cooker maintained internal pressure and that the lid could be removed by simply touching it. There is no scientific evidence connection between Dr. Eshrag[h]i's opinions and the actual evidence in this case."  *Id.* at 13–14.  Defendants assert that, "[b]ecause there is no physical evidence or test data to support Dr. Eshrag[h]i's conclusions, they are, at most, inferences," and should be excluded.  *Id.* at 14.

The Court agrees.  Dr. Eshraghi's report provides no support for his conclusion that the lid can explosively separate from the base.  He did not attempt to remove the lid while the multicooker was pressurized and does not describe any event during his testing where the lid explosively separated from the base.  Assuming, arguendo, that the soup function is a pressure-cooking function, Dr Eshraghi's report provides no explanation as to how he concluded from the fact that the pressure-cooking function can turn on that it can cause the lid to explosively separate from the base.  Without any explanation or supporting experimental evidence in Dr. Eshraghi's report, his opinion

that the lid can explosively separate from the base is supported only by *ipse dixit*.[10]   As

such, Dr. Eshraghi will not be permitted to testify at trial that the multicooker can retain

pressure when the lid is misaligned and that under these circumstances "the lid can

explosively separate from the base on its own or by simple touch or movement."

## IV.   CONCLUSION

It is therefore

**ORDERED** that Defendants Sunbeam Products, Inc. and Newell Brands Inc.'s

Motion to Exclude Plaintiff's Expert Soheil Eshraghi [Docket No. 99] is **DENIED in part**

**and GRANTED in part**.  It is further

**ORDERED** that plaintiff Georgina Perez may file a motion to withdraw her

admissions regarding how she attached the lid of the multicooker by **12:00 p.m. on**

**June 14, 2024**.


DATED June 13, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[10] In his deposition, Dr. Eshraghi testified that his testing was conducted to validate the manufacturer's report that the pressure cooker could pressurize while the lid is misaligned.  Docket No. 99-6 at 63:1–10.  While Dr. Eshraghi's report identifies "product test and evaluation reports" as part of the materials Dr. Eshraghi reviewed, his report does not identify any results of such testing and does not state that this testing was part of the basis for his opinions.  *See* Docket No. 101-1 at 20.  Accordingly, Dr. Eshraghi will not be permitted to opine on evidence of defendants' testing of the multicooker except to the extent he is able to testify whether or not he attached the lid of Ms. Perez's multicooker in the same way as demonstrated in defendants' testing.