IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01915-PAB-KAS

GEORGINA PEREZ,

     Plaintiff,

v.

SUNBEAM PRODUCTS, INC. d/b/a Jarden Solutions, and
NEWELL BRANDS, INC.,

     Defendants.

---

## ORDER

---

This matter is before the Court on the Jury Verdict [Docket No. 207], Plaintiff's Brief Re: Application of Colorado Damages Cap [Docket No. 214], and Defendants Sunbeam Products, Inc. and Newell Brands Inc.'s Responsive Brief Re: Application of Colorado Damages Caps [Docket No. 217].

## I. BACKGROUND

This case arises out of injuries plaintiff Georgina Perez sustained on June 3, 2019 while using a 6-Quart Express Crock Multi-Cooker manufactured by defendants Sunbeam Products, Inc. ("Sunbeam") and Newell Brands, Inc. ("Newell"). Docket No. 59 at 2–6. Beginning on December 9, 2024, the Court held a five-day jury trial in this case. Docket Nos. 196–200. On December 13, 2024, the jury returned a verdict in favor of Ms. Perez on her state law claim for the sale of a defective product and her state law claim for negligence. Docket No. 207 at 1–2. At trial, defendants raised the affirmative defense of the comparative fault of Ms. Perez. *See* Docket No. 59 at 4–5.

The jury allocated fault among the parties as follows: Ms. Perez, 10%; Sunbeam, 27%; Newell, 63%.  Docket No. 207 at 3.  The jury awarded Ms. Perez $3,500,000 for non-economic losses or injuries and $2,000,000 for physical impairment and disfigurement. *Id.*  The jury also awarded Ms. Perez $15,000,000 in exemplary damages against Sunbeam and $35,000,000 against Newell.  *Id.*

On December 27, 2024, Ms. Perez filed a motion for leave to file supplemental briefing on the issue of how to apply Colorado's statutory limits on damages in this case, Docket No. 212, which motion the Court granted.  Docket No. 213.  On January 17, 2025, Ms. Perez filed her brief regarding the damages award in this case.  Docket No. 214.  On February 7, 2025, defendants responded.  Docket No. 217.  Ms. Perez did not file a reply.

## II.    DISCUSSION

Colorado law provides statutory limitations on the damages Ms. Perez may recover in this action.  First, under Colorado law, "[i]n an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss." Colo. Rev. Stat. § 13-21-111.5(1).

Second, "[i]n any civil action filed before January 1, 2025 . . . in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars unless the court finds justification by clear and convincing evidence therefor.  In no case shall the amount of noneconomic loss or injury damages in an action filed before January 1, 2025, exceed five hundred thousand dollars."  Colo. Rev. Stat. § 13-21-102.5(3)(a)(I).  "The limitations on damages

set forth in subsection (3)(a)(I) of this section must be adjusted for inflation," as required by a certified adjustment by the Colorado secretary of state.  Colo. Rev. Stat. § 13-21-102.5(3)(c)(I)–(III).  The Colorado secretary of state has certified that, for "all claims for relief that accrue on and after January 1, 2008, and before January 1, 2022," the "adjusted limitation is $468,010 (which for C.R.S. 13-21-102.5(3)(a) may be increased by the court upon clear and convincing evidence to a maximum of $936,030)."  Colo. Sec'y State, Jena Griswold, Adjusted Limitation on Damages Certificate (Feb. 12, 2024); *see also* Colo. Sec'y State, Certificates - Damages & Interest Rate on Judgments, https://www.sos.state.co.us/pubs/info_center/certificates.html (last visited Mar. 27, 2025); *Sheldon v. Golden Bell Retreat*, No. 19-cv-1371-REB-NYW, 2022 WL 17818297, at *7 (D. Colo. Aug. 24, 2022) ("The court may take judicial notice of these adjustments, which are published by the Colorado Secretary of State.").

Finally, "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award [her] reasonable exemplary damages.  The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party."  Colo. Rev. Stat. § 13-21-102(1)(a).  "Notwithstanding the provisions of subsection (1) of this section, the court may reduce or disallow the award of exemplary damages to the extent that: (a) [t]he deterrent effect of the damages has been accomplished; or (b) [t]he conduct which resulted in the award has ceased; or (c) [t]he

purpose of such damages has otherwise been served."  Colo. Rev. Stat. § 13-21-102(2).  Furthermore,

> Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:
>
>> (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or
>>
>> (b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

Colo. Rev. Stat. § 13-21-102(3).  The parties dispute which damage caps apply in this case and what the amount of the final judgment should be.  Docket Nos. 214, 217.

### A. Pro Rata Adjustment

Neither party disputes that the Court should apply a proportional adjustment to Ms. Perez's damages based on the percentage of fault attributed to each defendant. *See* Docket No. 214 at 2; Docket No. 217 at 2; *see also* Colo. Rev. Stat. § 13-21-111.5(1).  Therefore, the Court finds that Sunbeam is liable for 27% of the actual damages[1] awarded to Ms. Perez, namely, $945,000 in non-economic damages and

---

[1] The Court does not adjust an award of exemplary damages based on the comparative fault of the parties.  Instead, because the maximum amount of exemplary damages is based on the amount of actual damages, a proportional reduction is factored into the exemplary damages award.  *See Vickery v. Evans*, 266 P.3d 390, 393 (Colo. 2011) ("Therefore, while exemplary damages, in contrast to compensatory damages, are not directly reduced in proportion to the comparative negligence of the victim or the pro rata liability of other parties, 'actual damages,' the upper limit at which exemplary damages are capped, have already been reduced, according to the dictates of sections 13–21–111 and 111.5, to reflect only those compensatory damages for which the defendant is personally liable.").

4

$540,000 for physical impairment and disfigurement.  Newell is liable for 63% of Ms. Perez's actual damages, namely, $2,205,000 in non-economic damages and $1,260,000 for physical impairment and disfigurement.

## B. Non-Economic Damages

The jury awarded Ms. Perez non-economic damages that exceed the statutory maximum for such damages.  Neither party disputes that the Court must reduce Ms. Perez's award for non-economic damages.  *See* Docket No. 214 at 3; Docket No. 217 at 2–3.  Instead, the parties dispute whether Ms. Perez's non-economic damages should be reduced to $468,010 or $936,030 as to each defendant.  *See* Docket No. 214 at 3–5; Docket No. 217 at 2–7; Colo. Rev. Stat. § 13-21-102.5(3)(a)(I); *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1362 (Colo. 1994) ("We hold that the cap in section 13–21–102.5 applies to the liability share of each defendant in a case, and does not act as a cap on the total amount a plaintiff may recover.").

"Under the plain language of the provision, the standard limit on noneconomic damages is $250,000, or $468,010 as adjusted for inflation." *Pisano v. Manning*, 510 P.3d 572, 576 (Colo. App. 2022) (citing *Pearson v. Dist. Ct.*, 924 P.2d 512, 517 (Colo. 1996) (the term "shall not" constitutes a "mandatory command" by the legislature)). "Thus, the statutory cap 'reflects the legislature's intent to identify the maximum non-economic recovery that should be available in a typical case.'" *Id.* (quoting *Schwab v. Martino*, No. 05-cv-01456-MSK-MEH, 2007 WL 4522714, at *5 (D. Colo. Dec. 17, 2007)).  Ms. Perez's non-economic damages may not exceed $468,010 unless the Court "finds justification by clear and convincing evidence" to exceed the cap.  Colo. Rev. Stat. § 13-21-102.5(3)(a)(I); *Pisano*, 510 P.3d at 576 (citing *Nelson v. United States*, No. 11-cv-02953-WYD-MEH, 2014 WL 1929585, at *14 (D. Colo. May 14,

2014)).  The "justification for exceeding the cap, not the fact of noneconomic damages,
must be supported by clear and convincing evidence."  *Pisano*, 510 P.3d at 576.  Courts
have awarded non-economic damages above the standard damages cap in "'extreme
circumstances' involving a 'seriously or desperately injured plaintiff.'"  *Straughen v.
BHS, Inc.*, No. 21-cv-02230-NYW-SBP, 2024 WL 1251421, at *2 (D. Colo. Mar. 19,
2024) (quoting *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1253 (D. Colo.
1999)) (exceeding the damages cap where plaintiff's leg was amputated); *Warembourg
v. Excel Elec., Inc.*, 471 P.3d 1213, 1234 (Colo. App. 2020) (upholding determination
that higher damages cap applied to plaintiff's "profound, severe, and life-altering"
injuries); *Schwab*, 2007 WL 4522714, at *4 (exceeding damages cap where plaintiff
suffered "catastrophic damage to his leg"); *Carpenter v. Am. Family Mut. Ins. Co.*, No.
13-cv-01986-JLK, 2015 WL 8529775, at *1 (D. Colo. Dec. 11, 2015) (exceeding
damages cap where plaintiff suffered "the permanent loss of sensation in her genital
and urinary organs").

      Ms. Perez maintains that she should recover $936,030 from each defendant for
her non-economic damages.  Docket No. 214 at 3.  She argues that the evidence at trial
demonstrated (1) her injuries included second and third degree burns over thirteen
percent of her body, (2) it is emotionally painful for Ms. Perez to look at herself in the
mirror due to the permanent scarring from her burns, and (3) she can no longer cook
with salt or enjoy certain foods.  *Id.* at 4–5.

      During the trial, Ms. Perez's treating physician, Dr. Lily Daniali, testified that Ms.
Perez's injuries resulted in second-degree burns over thirteen percent of her body,
including burns on her neck, chest, breasts, and upper extremities.  Dr. Daniali testified

that Ms. Perez also had a third-degree burn on her breast that was approximately the size of the palm of Ms. Perez's hand.  She testified that, six months after Ms. Perez underwent surgery to ameliorate her burn injuries, Ms. Perez continued to report hypersensitivity and discomfort around her breast.  At trial, Ms. Perez testified that her burn injuries continue to itch to the extent that she will scratch herself until she bleeds, that she has lost self-confidence due to her appearance, and that she can no longer enjoy prolonged activities in the sun without taking preventive measures such as wearing a hat and sunscreen.

The evidence at trial demonstrates that Ms. Perez's burn injuries were both serious and painful.  Moreover, she suffered disfigurement on both her chest and, to some extent, her face, which has had a lasting effect on her self-image and self-confidence.  Nevertheless, the Court is mindful of "the legislature's intent to identify the maximum non-economic recovery that should be available in a typical case."  *Schwab*, 2007 WL 4522714, at *5.  Here, the Court finds that Ms. Perez has not shown by clear and convincing evidence that her injuries are so "profound, severe, and life-altering," *Warembourg*, 471 P.3d at 1234, to warrant exceeding the standard damages cap in this case.  For example, Ms. Perez testified that she no longer has pain from her injuries, even if her scars continue to cause her discomfort.  Furthermore, although she needs to take precautions when spending time in the sun, Ms. Perez continues to recreate outdoors.  Finally, Ms. Perez returned to work after recovering from her injuries and is currently employed.  She therefore did not seek damages for work disability.  These facts weigh against a finding that Ms. Perez's injuries are so life-altering that they are beyond the scope of a typical case.  *See Watson v. Dillon Cos., Inc.*, No. 08-cv-00091-

WYD-CBS, 2013 WL 4547477, at *5 (D. Colo. Aug. 28, 2013) ("I do not find such

exceptional circumstances are present in the instant case. . . .  Wayne Watson's injury

has not rendered him completely disabled.  He works part-time, takes walks outdoors

with his wife, and is able to move upstairs and downstairs at home.").  Therefore, the

Court will reduce Ms. Perez's non-economic damages to $468,010 as to each

defendant.

### C. **Exemplary Damages**

The jury awarded Ms. Perez $15,000,000 in exemplary damages as to Sunbeam

and $35,000,000 as to Newell.  Docket No. 207 at 3.  However, under Colorado law, a

jury's award of exemplary damages may not exceed a plaintiff's actual damages.  Colo.

Rev. Stat. § 13-21-102(1)(a) ("[T]he jury . . . may award . . . reasonable exemplary

damages.  The amount of such reasonable exemplary damages shall not exceed an

amount which is equal to the amount of the actual damages awarded to the injured

party.").  The court may then increase or decrease the exemplary damages award.

Colo. Rev. Stat. § 13-21-102(2) ("the court may reduce or disallow the award of

exemplary damages"); Colo. Rev. Stat. § 13-21-102(3) ("the court may increase any

award of exemplary damages").  Defendants argue that the Court should disallow

exemplary damages in this case.  Docket No. 217 at 8–10.  Ms. Perez argues that the

Court should reduce the jury's award of exemplary damages to no less than three times

her actual damages, calculated by using the total actual damages awarded by the jury.

Docket No. 214 at 5–15.

As a preliminary matter, both parties rely on evidence outside the trial record to

support their arguments.  *See* Docket No. 214 at 8; Docket No. 217 at 9–10.  Neither

party cites authority to support the proposition that the Court may consider such

evidence. Both § 13-21-102(2) and § 13-21-102(3) refer to considerations of defendants' conduct after a plaintiff was injured. *See* Colo. Rev. Stat. § 13-21-102(2)(b) (courts consider whether the "conduct which resulted in the award has ceased"); Colo. Rev. Stat. § 13-21-102(3)(a) (courts consider whether defendants have "continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner"). However, the parties had the ability to introduce evidence during trial as to whether defendants' offending conduct had ceased or continued after the case was filed. In any event, as discussed below, the Court finds that the posttrial evidence submitted in the briefing does not impact the Court's analysis. Neither party has demonstrated that Ms. Perez is entitled to an award of exemplary damages that is greater or less than her actual damages.

### 1. Decreasing Exemplary Damages Award

The Court will first consider defendants' request that the Court disallow exemplary damages. Section § 13-21-102(2) states that a court may disallow exemplary damages "to the extent that: (a) [t]he deterrent effect of the damages has been accomplished; or (b) [t]he conduct which resulted in the award has ceased; or (c) [t]he purpose of such damages has otherwise been served." Colo. Rev. Stat. § 13-21-102(2). Defendants argue that "[a]ll the conduct complained of by Plaintiff ceased prior to the time Plaintiff filed suit in May 2021."[2] Docket No. 217 at 9. At trial, evidence was

---

[2] Defendants do not identify the applicable standard of review for their argument. *See* Docket No. 217 at 8–10. Section 13-21-102(2) requires the Court to consider, among other things, whether defendants have continued the conduct that resulted in Ms. Perez's damages. Colo. Rev. Stat. § 13-21-102(2)(b). Affirmative defenses are "facts and arguments that, if true, will defeat the plaintiff's claim," *Miller v. Amos*, 543 P.3d 393, 399 (Colo. 2024) (citation and alterations omitted), including Ms. Perez's claim for exemplary damages. A defendant generally bears the burden of proving its

introduced that defendants recalled every multicooker manufactured from July 1, 2017

through October 1, 2018 in conjunction with the Consumer Products Safety Commission

("CPSC") on November 24, 2022.  Defendants maintain that, "by the time Plaintiff filed

suit in this case, the purpose for which she sought exemplary damages had been

accomplished – the offending product had been recalled and was no longer being sold.

Thus, the deterrent effect of the exemplary damages award has been accomplished, the

conduct has ceased, and the purpose of the damages has otherwise been served."[3]  *Id.*

at 10.

At trial, Ms. Perez's expert in mechanical engineering and material sciences, Dr.

Soheil Eshraghi, testified regarding certain tests he conducted on Ms. Perez's multi-

---

affirmative defenses by a preponderance of the evidence.  *Dixon v. United States*, 548
U.S. 1, 8 (2006) ("Although undisputed in this case, it bears repeating that, at common
law, the burden of proving 'affirmative defenses—indeed, 'all . . . circumstances of
justification, excuse or alleviation'—rested on the defendant.").  Because § 13-21-
102(2)(b) gives no indication to the contrary, the Court finds that defendants bear the
burden of demonstrating that they have ceased the conduct that resulted in Ms. Perez's
injuries by a preponderance of the evidence.  *See Larrieu v. Best Buy Stores, L.P.*, 303
P.3d 558, 561 (Colo. 2013) ("We generally construe statutes as consistent with the
common law.").

[3] In their brief, defendants rely on evidence not introduced at trial.  *See* Docket
No. 217 at 9–10.  Specifically, defendants rely on a declaration by David Galambos, the
Senior Regulatory Manager for Newell.  Docket No. 217-2.  Defendants do not address
why the Court can consider Mr. Galambos's declaration.  Instead, they claim that,
"[b]ecause Plaintiff references documents and information entirely outside the trial
record it is necessary for Defendants to submit additional factual information to address
Plaintiff's arguments."  Docket No. 217 at 10 n.2 (internal citation omitted).  However,
the Court finds that it does not need to resolve whether the Court is limited to the
evidence produced at trial because, even if the Court were to consider Mr. Galambos's
declaration, the declaration does not show that Ms. Perez's exemplary damages award
should be reduced.  Instead, the declaration addresses the timing of defendants recall.
For the reasons discussed below, defendants' recall is insufficient to show that "the
purpose for which [Ms. Perez] sought exemplary damages had been accomplished."  *Id.*
at 9.

cooker.  Dr. Eshraghi identified five positions in which the lid of the multicooker can be

affixed to the base and which will allow the multicooker to turn on.  However, he stated

that the lid is properly locked in only one of these positions.  He testified that, in his

opinion, the multicooker was defectively designed because it should not be able to turn

on if the lid is not in the correct, fully locked position.

Dr. Eshragi further testified about the written materials he reviewed in developing

his expert opinion.  One of the documents Dr. Eshragi considered was an August 6,

2018 report defendants sent to the CPSC that stated that defendants had received

reports of twenty incidents where consumers experienced the multicooker pressurizing

even though the lid was not in the properly locked position.  He stated that, on

September 10, 2018, defendants sent another report to the CPSC that indicated

defendants were making modifications to the product to improve the product's safety.

Dr. Eshragi opined that only one of the multiple design changes identified in the

September 10, 2018 report would address the defect he found in the product.  He stated

that the only change "that would help . . . was number E, [the] magnet cover height was

supposed to be extended so it would not allow it engage in any other position.  That's

the one that was supposed to take care of this condition."  However, Dr. Eshragi

testified that he was unaware of whether the change to the magnetic locking

mechanism for the lid was ever made.  He said that Ms. Perez's multicooker was

supposed to include all of the modifications defendants said they would make to the

CPSC.  He stated that Ms. Perez's multicooker included an updated lid, which he was

able to identify by certain visible indications, such as the addition of a large green

warning label and a red bobber valve.  Dr. Eshragi testified that Ms. Perez's multicooker did not have a changed magnetic locking mechanism.

Finally, deposition testimony by Mr. Galambos was admitted into evidence in which he said that the recall which defendants undertook with the CPSC was directed to multicookers with lids that did not include the changes identified in defendants September 10, 2018 report to the CPSC.  The recall instructed consumers not to use their multicooker until defendants sent the consumer a new lid, like the lid that came with Ms. Perez's multicooker.

At trial, defendants produced no evidence to explain why Ms. Perez's multicooker did not include the design change in the magnetic locking mechanism defendants identified in their September 10, 2018 report to the CPSC.  Moreover, no evidence was introduced that demonstrated that extending the height of the magnet cover would have been effective at preventing the multicooker from pressurizing when the lid was not properly attached.

The Court finds that defendants have failed to demonstrate either that the "deterrent effect of the damages has been accomplished" or that the "conduct which resulted in the award has ceased."  Colo. Rev. Stat. § 13-21-102(2)(a)–(b).  There was no evidence that the recall of Ms. Perez's product was effective.  Rather, despite Ms. Perez's multicooker including the modified lid, her multicooker was able to pressurize with a misaligned lid.  Therefore, exemplary damages are appropriate in this case to deter defendants from (1) introducing a defectively designed product into the market, (2) failing to make appropriate design modifications once defendants were aware their

product was dangerously defective, and (3) failing to ensure that the design

modifications necessary to ameliorate a dangerous design defect were implemented.


### 2. Increasing Exemplary Damages Award

The Court will next address Ms. Perez's request that the Court decrease the

exemplary damages award to no less than three times the actual damages found by the

jury.  Docket No. 214 at 5–15.  The Court may increase the statutory limit on Ms.

Perez's exemplary damages if Ms. Perez demonstrates that defendants have

"continued the behavior or repeated the action which is the subject of the claim against

the defendant in a willful and wanton manner, either against the plaintiff or another

person or persons, during the pendency of the case."  Colo. Rev. Stat. § 13-21-

102(3)(a).  The Court may also increase Ms. Perez's exemplary damages award if she

proves that defendants have "acted in a willful and wanton manner during the pendency

of the action in a manner which has further aggravated the damages of [Ms. Perez]

when the defendant knew or should have known such action would produce

aggravation."  Colo. Rev. Stat. § 13-21-102(3)(b).  Ms. Perez has the burden of proving

that she is entitled to an award of exemplary damages that exceeds her actual damages

beyond a reasonable doubt.  *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59,

66–67 (Colo. 2005) ("The trial court's findings on [whether to treble the exemplary

damages award] were detailed [and] specific. . . .  Accordingly, we conclude that the

failure of the trial court to state that the evidence supported such findings beyond a

reasonable doubt is not fatal, because the findings otherwise lead inexorably to just

such a conclusion.").  Ms. Perez initiated this action on May 28, 2021.  Docket No. 3 at

1.  Therefore, Ms. Perez must demonstrate that defendants' willful and wanton conduct continued after May 28, 2021.

Ms. Perez asserts that the Court should allow her exemplary damages to exceed her actual damages based on the evidence at trial that defendants' recall of the product was ineffective and that other individuals were injured using the multicooker.  Docket No. 214 at 6–8 ("At trial, the evidence established that the Defendants continued to sell its pressure cooker product despite the fact that the product was defective and had at least 119 known incidents of pressurization without being in the locked position, causing burns and other injuries to over 99 consumers.").  Ms. Perez maintains that the incidents involving other users show that defendants have "continued the behavior or repeated the action" of selling a defective multicooker "in a willful and wanton manner" against "another person or persons, during the pendency of the case."  *Id.* at 5–15; Colo. Rev. Stat. § 13-21-102(3)(a).

Ms. Perez appears to rely on two pieces of evidence to support her assertion that the evidence at trial demonstrates that she is entitled to an exemplary damages award three times greater than her actual damages.  *See* Docket No. 214 at 5–15.  First, the recall notice of the multicooker was admitted into evidence.  *See* Plaintiff's Exhibit 207. The recall notice is dated November 24, 2020 and states that defendants have "received 119 reports of lid detachment, resulting in 99 burn injuries ranging in severity from first-degree to third-degree."  *Id.* at 2, 4.  Second, defendants created a spreadsheet that tracks injuries to consumers, and the spreadsheet was admitted into evidence.  *See* Plaintiff's Exhibit 197; Plaintiff's Exhibit 197A.  The spreadsheet lists the date on which defendants received a report about the injured consumer.  *See* Plaintiff's

14

Exhibit 197.  The last incident listed in the spreadsheet was reported on August 15,

2018.  *Id.*

  The evidence Ms. Perez produced at trial regarding either the recall notice or

incidents in which other consumers were injured provides no basis for increasing Ms.

Perez's award of exemplary damages.  The recall notice was issued on November 24,

2020, and is the source of Ms. Perez's information regarding the 99 burn injuries.

Similarly, the most recent date of the injury on the spreadsheet is August 15, 2018.  As

such, the evidence Ms. Perez introduced at trial regarding defendants' conduct towards

other consumers predates the filing of Ms. Perez's complaint on May 28, 2021.

Therefore, Ms. Perez's evidence does not show willful and wanton conduct by

defendants that occurred "during the pendency of th[is] case."  Colo. Rev. Stat. § 13-21-

102(3)(a); s*ee also Bennett v. Greeley Gas Co.*, 969 P.2d 754, 761–62 (Colo. App.

1998) (finding that evidence of defendant's conduct in 1987 was not material to

exemplary damages award because the conduct occurred after the event giving rise to

liability in 1976 but before the plaintiff filed suit in 1994).

  Ms. Perez also argues that defendants' "willful decision to continue selling the

multi-cooker despite known defects is evidenced by numerous examples of preventable

burn injuries that occurred after the filing of Plaintiff's Complaint."  Docket No. 214 at 8.

To demonstrate that injuries from the multicooker continued to occur after this case was

filed, Ms. Perez relies on a document that appears to be an incident report from the

CPSC.  *Id.* (citing Docket No. 214-3).  In the report, a consumer states

> First time using my Crock Pot express cooker with the *safe* lid that was sent out
> to replace the recalled *defective* lid sold with the machine.  Upon reaching
> temperature and starting the count down, there was a loud pop and a burst of
> steam erupted from the machine, spraying scalding broth on my arms/legs/chest

as well as . . . my entire kitchen.  The steam valve remained in place and was not where the liquid sprayed from.  This was my first time using this lid.

Docket No. 214-3 at 1.  The report specifies that the incident occurred on June 12, 2021 and that the report was generated the same day.  *Id.* at 1–2.  The report further indicates that it was "Sent to Manufacturer" on June 16, 2021 and that the "Report First Publication Date" was July 1, 2021.  *Id.* at 2.  The incident report was not admitted into evidence at trial.

The report indicates that the consumer was injured on June 12, 2021, but it does not identify when the multicooker was manufactured or when the consumer purchased the multicooker.  *Id.* at 1–2.  Moreover, although the report indicates that the consumer was injured while using defendants' replacement lid and that it was the first time the consumer used the lid, the report does not indicate when defendants sent her the new lid.  *Id*.  Because Ms. Perez initiated this action approximately two weeks before the incident occurred, it is possible that defendants' conduct regarding this consumer occurred before Ms. Perez filed suit.  Therefore, the report is insufficient to demonstrate beyond a reasonable doubt that defendants' willfully continued to sell a defective multicooker after Ms. Perez filed suit.

Ms. Perez next argues that "most telling of the Defendants willful and wanton conduct, is that while they did continue to make revisions to the user's manual after the recall and during the pendency of this case, they never included the express warning that they knew was true from the recall notice, i.e.: that the crock-pot multi-cooker could still pressurize when not in the locked position and could still cause the same risk of harm that Ms. Perez faced now almost six years ago when she suffered the burns from her incident."  Docket No. 214 at 8 (emphasis omitted).  Ms. Perez provides no support

for her assertion that, during the pendency of this litigation, the manual for the multicooker failed to warn consumers that the multicooker may pressurize even if the lid is not properly attached.  Although portions of the user's manual that came with Ms. Perez's product were admitted into evidence, *see* Plaintiff's Exhibits 185, 190, Ms. Perez has produced no evidence that defendants did not change the user's manual since that time.  As such, the user's manual provides no basis for increasing Ms. Perez's exemplary damages award.

Ms. Perez argues that "there are numerous lawsuits around the country concerning incidents occurring through 2021, 2022, and 2023, post-recall and during the pendency of this action," and that these lawsuits support a determination that Ms. Perez is entitled to an increased exemplary damages award.  Docket No. 214 at 9.  In her brief, Ms. Perez includes a table with two columns.  *See id.* at 9–11  The first column lists the "date of injury" and purports to identify the dates the plaintiffs in these cases were injured.  *Id.*  The second column provides "Case Info," and either lists the name of a case filed against defendants or identifies the injured consumer by name and indicates that the matter is "Pre-Suit."  *Id.*  The table provides no other information about these cases, including information about the nature or circumstances of the plaintiffs' injuries.  As such, these other cases do not show beyond a reasonable doubt that defendants have continued to sell a defective multicooker during the pendency of this case.

The only case Ms. Perez attempts to substantiate beyond the mere assertion that the case exists is *Rivera v. Sunbeam Products, Inc.*, 23-cv-02298-PAB-STV, which is a case on the Court's docket.  *Id.* at 9.  Ms. Perez attaches a copy of the plaintiff's

complaint in the *Rivera* case.  Docket No. 214-5.  The *Rivera* plaintiff alleges that, "[o]n
or about November 7, 2022, while using the subject Crock-Pot® Pressure Cooker in a
reasonable and expected way, Plaintiff suffered serious burn injuries as the direct and
proximate result of the Pressure Cooker's lid opening while the contents of the Pressure
Cooker were under pressure, causing its scalding hot contents to forcefully erupt from
the Pressure Cooker and onto Plaintiff."  *Id.* at 5, ¶ 16.

First, the complaint in *Rivera* has little, if any, evidentiary value since it consists
of allegations, not proof.  Second, even if the Court were to consider the complaint as
some evidence that a consumer using a multicooker manufactured by defendants was
injured after Ms. Perez filed suit, the complaint suggests that defendants' conduct giving
rise to the alleged incident occurred before this case began.  The complaint alleges that
the *Rivera* plaintiff's multicooker was manufactured on January 30, 2018.  *Id.* at 4, ¶ 14.
The complaint does not identify when the multicooker was purchased and contains no
allegations regarding whether the multicooker included a lid with post-recall
modifications.  As such, the *Rivera* complaint does not prove, beyond a reasonable
doubt, that defendants have continued to sell defective multicookers during the
pendency of this case.

Finally, Ms. Perez argues that defendants have violated the terms of a 2016
settlement agreement with the CPSC in a case involving a Mr. Coffee product and that
this demonstrates that defendants' conduct during this case warrants increasing Ms.
Perez's exemplary damages award.  Docket No. 214 at 12–14.  She maintains that, as
part of the settlement agreement, defendants promised to develop and implement
"written policies and procedures with respect to conducting prompt and effective recalls

of consumer products." *Id.* at 12. Ms. Perez argues that defendants have not satisfied this requirement. *Id.* Section 13-21-102(3)(a) allows the Court to consider whether defendants have "continued the behavior or repeated the action which is the subject of the claim against the defendant." Colo. Rev. Stat. § 13-21-102(3)(a). Ms. Perez's claims against defendants were not based on defendants' failure to have written policies regarding product recalls, and defendants' alleged failure to comply with the terms of a settlement agreement with a third party is immaterial to Ms. Perez's claim for exemplary damages. Therefore, Ms. Perez has failed to prove beyond a reasonable doubt that she is entitled to increased exemplary damages.[4]

Ms. Perez next argues that the Court should increase her exemplary damages award because defendants acted in a willful and wanton manner during the pendency of the action, which has further aggravated Ms. Perez's damages. Docket No. 214 at 14–15; Colo. Rev. Stat. § 13-21-102(3)(b). She maintains that, during trial, defendants "continued to blame and shame the Plaintiff. Including questioning her about her choice of outfits for a family wedding, and her ability to read the owner's manual." Docket No. 214 at 14. She states that defendants "knew or should have known that such conduct would aggravate her damages yet pursued this litigation strategy." *Id.* Defendants' reliance on the affirmative defense of contributory negligence, a defense which the jury agreed with, at least in part, by finding Ms. Perez 10% at fault, is not a basis for

---

[4] Defendants argue that, under the Supreme Court's decision in *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), evidence of incidents outside the state of Colorado cannot be considered in determining whether defendants have continued the behavior which is the subject of Ms. Perez's claims against another person, during the pendency of the case. Docket No. 217 at 17. Because none of Ms. Perez's evidence demonstrates that she is entitled to an increased exemplary damages award, the Court will not consider defendants' argument.

increasing Ms. Perez's exemplary damages award.  Nothing about defendants'
contributory negligence evidence was irrelevant to the defense, unnecessarily
cumulative, or improper.  *See Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME–MEH,
2009 WL 902437, at *16 (D. Colo. Apr. 1, 2009) (declining to increase exemplary
damages award under § 13-21-102(3)(b) because "Mostchoice's litigation conduct did
not constitute over-the-top aggressive conduct").

Neither party has demonstrated whether defendants continue to sell a defective
multicooker.  As such, defendants have not demonstrated that Ms. Perez's exemplary
damages award should be reduced to less than her actual damages under § 13-21-
102(2) and Ms. Perez has not proven that her exemplary damages should be increased
above her actual damages under § 13-21-102(3).  Therefore, the Court finds that Ms.
Perez is entitled to an exemplary damage award equal to her actual damages.

Ms. Perez asserts that Colo. Rev. Stat. § 13-21-102(1)(a) references "actual
damages awarded," whereas Colo. Rev. Stat. § 13-21-102(3) refers only to "actual
damages."  Docket No. 214 at 5.  Ms. Perez argues that, because § 13-21-102(3) does
not refer to awarded damages, the Court should use the actual damages found by the
jury, $5,500,000, as the starting point for determining the punitive damages cap in this
case.  *Id.*  Based on Ms. Perez's request that the Court award her $23,254,345.07 in
punitive damages against Newell, *id.* at 15, Ms. Perez appears to argue that, to
determine the damages cap for an individual defendant, the Court should consider the
total amount of actual damages awarded by the jury without first reducing the actual
damages by either the non-economic damages cap or the defendant's proportion of
fault.  Moreover, her request for approximately $23 million in punitive damages from

Newell indicates that Ms. Perez believes that the Court should add the total amount of prejudgment interest to the award of actual damages and then triple this amount to determine the maximum amount of punitive damages.  Because the jury found that Ms. Perez had $5,500,000 in actual damages and because Ms. Perez calculates the pre-judgment interest on these damages to be $2,251,448.36, she maintains that the Court should find that the punitive damages cap is three times $7,751,448.36, i.e. $23,254,345.07.  *See* Docket No. 214 at 15; Docket No. 214-10.

Ms. Perez cites no authority for the proposition that the Court should consider Ms. Perez's total actual damages, rather than the actual damages attributable to each defendant, to determine how much each defendant should pay in exemplary damages. The Colorado Supreme Court has taken the opposite approach.  *See Vickery*, 266 P.3d at 393 ("Therefore, while exemplary damages, in contrast to compensatory damages, are not directly reduced in proportion to the comparative negligence of the victim or the pro rata liability of other parties, 'actual damages,' the upper limit at which exemplary damages are capped, have already been reduced, according to the dictates of sections 13–21–111 and 111.5, to reflect only those compensatory damages for which the defendant is personally liable.").  Therefore, the Court will consider only those compensatory damages for which defendants are personally liable.  *Id.*  Moreover, courts apply the statutory damages cap on non-economic damages when determining the amount of actual damages.  *See Mower v. Centry I Chevrolet, Inc.*, No. 02-cv-01632-MSK–MEH, 2006 WL 2729265, at *22 (D. Colo. June 16, 2006) ("Accordingly, the Plaintiff's non-economic award is reduced to $366,250 pursuant to C.R.S.

§ 1321102.5(3).  When combined with the jury's award of economic damages, the

Plaintiff's total actual damages are $566,250.").

### 3.  Interest on Damages Award

Under Colorado law, "[b]ecause 'the amount of the actual damages awarded,' to

which 'reasonable exemplary damages' are statutorily limited, refers not to the jury's

assessment of total compensatory damages but to the compensatory damages

awarded against the defendant as the direct result of that assessment," the exemplary

damages award will "necessarily include statutorily mandated prejudgment interest."

*Vickery*, 266 P.3d at 394.  There are two kinds of prejudgment interest applicable to Ms.

Perez's claims: simple interest from the time of her incident to the time she filed suit,

and compounding interest from the time she filed suit to the date judgment is entered.

Section  13–21–101(1) "requires that simple interest be calculated on the amount of the

judgment from the date the action accrued until the day before the action is filed," at a

rate of 9%.  *Ochoa v. Vered*, 212 P.3d 963, 970 (Colo. App. 2009); *see also* Colo. Rev.

Stat. § 13-21-101(1) ("When such interest is claimed, it is the duty of the court in

entering judgment for the plaintiff in the action to add to the amount of damages

assessed by the verdict of the jury, or found by the court, interest on the amount

calculated at the rate of nine percent per annum.").  "The simple interest should then be

added to the judgment and that sum used as the initial base amount for calculating

compound interest annually from the date the action was filed until the date judgment

entered."  *Ochoa*, 212 P.3d at 970; Colo. Rev. Stat. § 13-21-101(1)("On actions filed on

or after July 1, 1979, the calculation must include compounding of interest annually from

the date the suit was filed"); *Mower*, 2006 WL 2729265, at *22-23 ("the Court finds that

simple interest from the accrual of the claim in May 2001 to the filing of the Complaint in

August 2002 is $63,703.13. This amount is added to the actual damage award of $566,250, yielding a total of $629,953.13, and then subject to 9% interest, compounded annually, from August 2002 to today's date." (footnotes omitted)).

The Court will first calculate the simple interest that has accrued on Ms. Perez's damages for physical impairment and disfigurement and non-economic damages. Sunbeam owes Ms. Perez $540,000 for physical impairment and disfigurement and $468,010 for non-economic damages. Ms. Perez was injured on June 3, 2019 and filed suit on May 28, 2021. Therefore, Sunbeam owes $179,995.50 in prelitigation interest for a total of $1,187,960.50 in prelitigation actual damages. Newell owes Ms. Perez $1,260,000 for physical impairment and disfigurement, and $468,010 for non-economic damages, which accrued $308,485.29 in interest before May 28, 2021, for a total of $2,036,495.29.

Second, the Court will determine the total amount of actual damages each defendant must pay, including the compounded interest that has accrued from the time the action was filed until the time judgment is entered.

Defendants argue that the Court should enter judgment *nunc pro tunc*[5] from the date the jury entered its verdict, meaning that the judgment would have an effective date of December 13, 2024. Docket No. 217 at 23. Although defendants cite cases that suggest Colorado courts may enter judgment *nunc pro tunc* under certain

---

[5] "Black's Law Dictionary defines *nunc pro tunc* as '[a] phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done. *Nunc pro tunc* entry is an entry made now of something actually previously done to have effect of former date.'" *Kalady v. Booker*, 104 F.3d 367,1996 WL 740837, at *1 n.1 (10th Cir. 1996) (table decision) (citing *Nunc pro tunc*, *Black's Law Dictionary* (5th ed. 1981)).

circumstances, *id.* (citing *Guarantee Tr. Life Ins. Co. v. Est. of Casper by & through Casper*, 418 P.3d 1163, 1173 (Colo. 2018)), they cite no cases demonstrating that the Court can or should use that doctrine in entering judgment pursuant to Federal Rule of Civil Procedure 58.  *See Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1277 (10th Cir. 2010) (finding that, because "[j]udgment is entered when the district court files a separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure," and because "judgment was not entered in accordance with Rule 58 until September 19, 2008," "the district court's Judgment, dated September 19, 2008, *nunc pro tunc* June 5, 2008, did not establish June 5, 2008 as the date of the entry of judgment" for purposes of calculating post judgment interest) (citing *Youngs v. Am. Nutrition, Inc.,* 537 F.3d 1135, 1146 (10th Cir. 2008); *Hull v. United States,* 971 F.2d 1499, 1507–09 (10th Cir. 1992)); *see also WildEarth Guardians v. Regan*, 591 F. Supp. 3d 995, 1001 (D. Colo. 2022) (*nunc pro tunc* "relief is exceptional: it 'has been granted only in a limited number of circumstances, where its entry is necessary to avoid, and does not create, an injustice at the hands of the court itself'" (quoting *Weil v. Markowitz*, 898 F.2d 198, 201 (D.C. Cir. 1990)); *Estridge v. Delta Air Lines, Inc.*, 1988 WL 63337, at *2 n.1 (S.D.N.Y. June 8, 1988) ("Generally, entry of judgment *nunc pro tunc* is allowed in two situations, when a case is under advisement when the death of a party occurs or when a judgment has been ordered but has not been entered through inadvertence."). Therefore, the Court will not enter judgment *nunc pro tunc*.

Ms. Perez filed her complaint on May 28, 2021, and the Court will enter judgment on the date of this order.  Sunbeam owes Ms. Perez $1,187,960.50 in physical impairment and disfigurement damages, non-economic damages, and prelitigation

interest.  Sunbeam also owes Ms. Perez $489,734.73 in prejudgment interest on her $1,187,960.50 damages award, which has accrued at a rate of 9% compounded annually from May 28, 2021, for a total actual damages award of $1,677,695.22. Because the amount of exemplary damages Ms. Perez may recover "necessarily include statutorily mandated prejudgment interest," *Vickery*, 266 P.3d at 394, the Court uses $1,677,695.22 as the amount of exemplary damages that Sunbeam owes Ms. Perez.

Newell owes Ms. Perez $2,036,495.29 in physical impairment and disfigurement damages, non-economic damages, and prelitigation interest.  Newell owes Ms. Perez $839,541.77 in prejudgment interest, which has accrued at a rate of nine percent compounded annually from May 28, 2021, for a total actual damages award of $2,876,037.07.  Because Ms. Perez's exemplary damages award is limited to an amount equal to her actual damages, Newell will be required to pay Ms. Perez $2,876,037.07 in exemplary damages.

## III.  CONCLUSION

Therefore, it is

**ORDERED** that defendant Sunbeam Products Inc. shall pay plaintiff Georgina Perez $1,677,695.22 in actual damages and $1,677,695.22 in exemplary damages.  It is further

**ORDERED** that defendant Newell Brands, Inc. shall pay plaintiff Georgina Perez

$2,876,037.07 in actual damages and $2,876,037.07 in exemplary damages.

DATED May 29, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge